462 F.3d 95
 D.H. BLAIR & CO., INC., and Kenton E. Wood, Individually and as Director and Chief Executive Officer of D.H. Blair & Co., Inc., Plaintiffs-Appellees,
v.
Judit GOTTDIENER, Ernest Gottdiener, Ervin Tausky and Suan Investments, Defendants-Appellants,
D.H. Blair Investment Banking Corp., J. Morton Davis and Alfred Palagonia, Defendants.
 Docket No. 04-3260.
 United States Court of Appeals, Second Circuit.
 Argued: May 19, 2005.
 Decided: September 5, 2006.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Jay R. Fialkoff, Moses & Singer LLP, New York, New York (Jayson D. Glassman, of counsel), for Plaintiffs-Appellees.
 Mark A. Tepper, Fort Lauderdale, Florida, for Defendants-Appellants.
 Before: WINTER and KATZMANN, Circuit Judges, and MURTHA,* District Judge.
 WINTER, Circuit Judge.
 
 
 1
 Judit and Ernest Gottdiener, Ervin Tausky, and Suan Investments (collectively "the Investors") appeal from a grant of default judgment to D.H. Blair & Co., Inc. ("D.H.Blair") and Kenton E. Wood (collectively "Broker"). The default judgment granted Broker's motion to confirm in part and vacate in part the award of an arbitration panel.
 
 
 2
 The Investors argue, inter alia, that the Southern District of New York ("S.D.N.Y.") lacked personal jurisdiction over them and was an improper venue. The Investors also argue that the district court abused its discretion by failing to vacate the default judgment. These arguments are directed to restoring the part of the award vacated in the present actions and to breathing life into their own motion to vacate the arbitral award, which was filed in the Southern District of Florida ("S.D.Fla.") and transferred to the S.D.N.Y. after entry of the default judgment. Although personal jurisdiction existed in the S.D.N.Y. and there was proper venue, we vacate so much of the default judgment as vacated parts of the arbitration award. We confirm the award because it was not manifestly contrary to law, after finding that the Investors waived their arguments regarding Florida law by not raising them in the S.D.N.Y. action.
 
 BACKGROUND
 
 3
 a) The Arbitration
 
 
 4
 The Investors maintained securities trading accounts with Broker. Each of the Investors signed separate account agreements and opened trading accounts with D.H. Blair in New York. Each agreement specified that disputes between the Investors and Broker be resolved by arbitration and that:
 
 
 5
 The award of the arbitrators, or the majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction. I consent to the jurisdiction of the state and federal courts in the City of New York for the purpose of compelling arbitration, staying litigation pending arbitration, and enforcing any award of arbitrators.
 
 
 6
 On May 22, 2000, Investors filed a statement of claim against Broker with the National Association of Securities Dealers ("NASD") in New York City alleging violations of the federal securities and other laws. When filing their claim, the Investors signed a "NASD Regulation Arbitration Uniform Submission Agreement," which provided that:
 
 
 7
 The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.
 
 
 8
 On December 19, 2000, the Investors amended their claims to assert violations of the New Jersey Blue Sky Law, contending that they were New Jersey residents. Less than three weeks later, on January 5, 2001, the Investors, in a collective change of mind, asserted that they were Florida residents during their entire relationship with Broker and requested that the matter be transferred to a NASD office in Florida. The dispute was transferred to Florida, and on June 25, 2002, the Investors amended their claim to assert violations of the Florida Blue Sky Law. The arbitration took place before a panel of three arbitrators in September and October 2002 in the NASD's Boca Raton, Florida offices.
 
 
 9
 At the commencement of the arbitration, the Investors initially sought "1) compensatory damages . . .; 2) interest; 3) return of commissions . . .; 4) punitive damages . . .; 4) [sic] costs; and 5) attorneys' fees," but in their "post-hearing submissions," which were considered by the arbitrators before rendering a decision, the Investors requested slightly different relief, including "1) compensatory damages . . .; 2) punitive damages . . .; 4) costs . . .; 5) pre-judgment interest; and 6) a finding that each respondent violated Section 517.301, Florida Statutes." The differences in the relief sought are monetarily significant in that the compensatory and punitive damages requested were higher and the request for "prejudgment interest" followed the request for compensatory and punitive damages and costs, implying that prejudgment interest should apply to each.
 
 
 10
 On January 29, 2003, the arbitrators awarded $255,000 in compensatory damages and $450,000 in punitive damages to the Investors. Both awards included prejudgment interest accruing from May 22, 1995, "until the date the Award is paid in full." The Investors moved to have the arbitrators recalculate the compensatory damages to include damages required under Florida law, and Broker filed a response defending the award. On March 12, 2003, the arbitration panel denied the motion.
 
 
 11
 b) Broker's New York Petition
 
 
 12
 Broker filed a Notice of Petition and Petition to Confirm in Part and Vacate in Part an Arbitration Award ("New York Petition") in the Supreme Court of New York County. The Petition had a return date of April 29, 2003, and stated that, as allowed by Section 403(b) of the New York C.P.L.R., answering papers had to be served on the movant seven days before that date. The Investors were served with these documents on April 11, 2003. In the New York Petition, Broker argued that the award should be confirmed, except for the portion that awarded prejudgment interest on punitive damages. Broker asserted that this part of the award was in manifest disregard of the law and contrary to public policy. On April 25, 2003, the Investors removed the New York Petition to the S.D.N.Y. with an explicit reservation of all rights and defenses, "including but not limited to all rights and defenses directed to the inadequacy and impropriety of service of process and personal jurisdiction." The Investors asserted that they had "not submitted to the Jurisdiction of the state court in New York and further believe[d] that neither the state court in New York, nor the [S.D.N.Y. had] personal jurisdiction over them." After removal, the Investors took no further action on the New York Petition until the entry of a default judgment as described infra.
 
 
 13
 On June 4, 2003, Broker sought and received a Clerk's Certificate of default based on the Investors' failure to respond to the New York Petition, relying upon noncompliance with Rule 81(c), which states in relevant part that "[i]n a removed action in which the defendant has not answered, the defendant shall answer or present the other defenses or objections available under these rules . . . within 5 days after the filing of the petition for removal." Fed.R.Civ.P. 81(c). Broker then moved in the district court for entry of default judgment under Rule 55(b)(2) on June 5, 2003. On June 17, 2003, the Investors filed an Opposition to Entry of Default Judgment, Cross Motion to Vacate Default, and Cross Motion to Dismiss or Transfer. In contesting the entry of default against them, the Investors argued that Broker's New York Petition was a motion, not a complaint or pleading; as such, default was improper because the Rules do not provide for entry of default judgment on a motion. Moreover, the Investors asserted that the New York Petition was incomplete as it lacked a memorandum of law. They also claimed that they had a meritorious defense in that Broker had never called the rule against prejudgment interest on punitive damages to the attention of the arbitrators. Finally, the Investors sought either a dismissal of the New York Petition for lack of personal jurisdiction and improper venue, arguing that the "balance of convenience plainly favors Florida," or a transfer to the S.D.Fla., where there was a pending, related action described below.
 
 
 14
 c) Investors' Florida Petition
 
 
 15
 While the Investors did not respond directly to the New York Petition after they removed it to the S.D.N.Y., on April 29, 2003, they filed their own Petition to Partially Vacate/Confirm Arbitration Award and to Determine Prejudgment Interest, Attorney's Fees and for Other Relief ("Florida Petition") in a Florida state court. The Florida Petition asked the court to vacate the compensatory damages portion of the arbitration award as being in manifest disregard of the law because the arbitrators specifically found a violation of Fla. Stat. ch. 517.301 but failed to award the full statutory damages as directed by Fla. Stat. ch. 517.211. The Florida Petition requested confirmation of the remainder of the award and the calculation of attorneys' fees, which had been deferred by the arbitrators.
 
 
 16
 On May 30, 2003, Broker removed the Florida Petition to the S.D. Fla. and filed an answer to it on June 6, 2003. On July 11, 2003, Broker moved to stay the Florida proceedings until the district court in the S.D.N.Y. ruled on the first-filed New York Petition or, in the alternative, to transfer venue of the Florida action to the S.D.N.Y. On August 29, 2003, the district court in the S.D.Fla. transferred the Florida Petition to the S.D.N.Y.
 
 
 17
 d) Judgment on the New York Petition
 
 
 18
 On August 20, 2003, before the transfer of the Florida Petition, Judge Owen granted a default judgment in the S.D.N.Y., confirming the award in part but vacating the portion adding prejudgment interest to the punitive damages. After holding that it had personal jurisdiction over the Investors, the district court held that the certificate of default was properly entered per Rule 81(c) because the New York Petition complied with state procedural rules, and a federal court takes a removed action in the posture in which it receives it. Therefore, the Investors had a duty to answer the New York Petition and could not ignore it once they removed it to federal court. Moreover, the district court found that there was no good cause to set aside the entry of default under Rule 55(c) because the Investors had not presented a meritorious defense to Broker's claim that the award of prejudgment interest on punitive damages was made in manifest disregard of the law. Finally, the district court denied the motion to transfer venue to Florida because the action was first filed in New York, there were no special circumstances, and many of the events underlying the action occurred in New York.
 
 
 19
 On September 2, 2003, the Investors filed a Rule 59(e) Motion to Alter or Amend the default judgment. The Investors claimed a due process violation in that the default judgment effectively disposed of the Florida Petition without addressing the merits. They also contended that the district court erred in setting aside the prejudgment interest on punitive damages. The district court denied the motion on May 7, 2004.
 
 DISCUSSION
 
 20
 a) Personal Jurisdiction
 
 
 21
 We first address the Investors' claim that the S.D.N.Y. lacked personal jurisdiction over them. "We review district court decisions on personal jurisdiction for clear error on factual holdings and de novo on legal conclusions." Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 36 (2d Cir.2001) (citing U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 151 (2d Cir.2001)). We hold that the district court properly exercised personal jurisdiction over the parties for two reasons. First, the Investors consented to personal jurisdiction in New York. Second, even absent consent, the Investors transacted business in and had sufficient contacts with New York to allow New York courts to exercise personal jurisdiction over them.
 
 1. Consent
 
 22
 Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements. See Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) ("And it is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . ."); 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1064, at 344 (3d ed.2002). Here, the Investors consented to jurisdiction in the S.D.N.Y. when they executed their "Cash Account Agreements" with Broker. These Agreements contained a forum-selection clause explicitly stating that the Investors "consent to the jurisdiction of the state and federal courts in the City of New York for the purpose of . . . enforcing any award of arbitrators."
 
 
 23
 While forum-selection clauses are regularly enforced, Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), several conditions must be met. A court must first determine that the existence of the clause was reasonably communicated to the parties. See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9 (2d Cir.1995). The Investors do not claim an unawareness of the jurisdictional consent clause; it was plainly printed on the Cash Account Agreements. Second, a forum-selection clause will be upheld unless "the clause was obtained through fraud or overreaching." Jones v. Weibrecht, 901 F.2d 17, 18 (2d Cir.1990) (citing The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). The Investors make no claim that their consent to the Cash Account Agreements was procured by fraud or overreaching.
 
 
 24
 Finally, unless it is clearly shown that "enforcement would be unreasonable and unjust," id., forum-selection clauses will be enforced. It is on this ground that the Investors argue the Cash Account Agreement clause should not be enforced. The Investors claim that because the Cash Account Agreements limit New York courts' jurisdiction to "enforcing any award of arbitrators" (emphasis supplied), that they did not consent to jurisdiction in New York to vacate any part of the award and that any reading otherwise is unreasonable and unjust.
 
 
 25
 We disagree. The Cash Account Agreements were an agreement to jurisdiction in the New York courts for both confirmation and vacatur proceedings. As such, the enforcement of the jurisdictional consent clause is neither unjust nor unreasonable. The purpose of the clause was to consent to New York jurisdiction for all arbitration-related proceedings, including "compelling arbitration, staying litigation pending arbitration, and enforcing any award of arbitrators." The use of the word "enforce" rather than the word "confirm" is significant. To enforce is "[t]o give force or effect to." Black's Law Dictionary (8th ed.2004). Because "[a]rbitration awards are not self-enforcing," they must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part. Hoeft v. MVL Group, Inc., 343 F.3d 57, 63 (2d Cir.2003). Here, Broker petitioned the court to confirm in part and vacate in part the arbitration award. That request simply sought to give effect to the arbitration award. The partial vacatur of the award sought by Broker does not alter the nature of the action, which we believe is properly considered to involve "enforcing" the arbitration award.
 
 
 26
 Furthermore, it is irrational to consent to jurisdiction in a court for purposes of confirming an award but not for purposes of vacating all or part of it. A party opposing confirmation of an award may rightly respond by asserting grounds for partial or whole vacatur; the right to do so cannot rationally be truncated by a personal jurisdiction clause permitting only the enforcement of arbitration awards. If we were to accept the Investors' interpretation, applications to confirm arbitration awards would have to be litigated separately from any application to vacate the award, even if only a partial vacating is sought. We cannot attribute such an irrational and wildly inefficient meaning to the clause.
 
 
 27
 We hold, therefore, that the Investors consented to the jurisdiction of the state and federal courts of New York.
 
 
 28
 2. The Investors Transacted Business in New York
 
 
 29
 Even absent consent, the S.D.N.Y. still had personal jurisdiction over the Investors. The Investors agree that subject matter jurisdiction in the S.D.N.Y. is based on diversity of citizenship. In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state, here, New York's Civil Practice Law and Rules ("N.Y.C.P.L.R.") section 302, New York's long-arm statute, see Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir.1996), so long as the district court's exercise of jurisdiction comports with the requirements of due process. See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir.1996).
 
 
 30
 N.Y. C.P.L.R. § 302(a)(1) permits a court to exercise personal jurisdiction over an out-of-state party if that party "transacts any business within the state" and if the claim arises from these business contacts. See CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir.1986). To meet the transacting business element under N.Y. C.P.L.R. § 302(a)(1), it must be shown that a party "`purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws . . . .'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir.1999) (quoting Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506, 509 (1970)) (alterations in original). "To determine whether a party has `transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." Id.
 
 
 31
 There are sufficient business contacts to support personal jurisdiction over the Investors under New York's long-arm statute. The Investors entered into a brokerage account agreement with Broker and executed numerous stock trades through Broker's New York offices on various New York exchanges. See, e.g., Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir.1999) (holding that personal jurisdiction was proper under N.Y. C.P.L.R. § 302(a)(1) based on defendants' active account with plaintiff security broker from which a series of transactions were made that formed the basis of the lawsuit). Furthermore, the Investors' contacts with New York provided fair warning of the possibility of being subject to the jurisdiction of New York. See Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 527 N.Y.S.2d 195, 522 N.E.2d 40, 43 (1988).
 
 
 32
 To meet the "arising out of" requirement of N.Y. C.P.L.R. § 302(a), there must be "a substantial nexus" between the transaction of business and the claim. Agency Rent A Car, 98 F.3d at 31; McGowan v. Smith, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323 (1981). The action in the S.D.N.Y. arose out of the arbitration award, which resolved the Investors' claims against Broker for fraudulently and negligently handling the Investors' investment accounts. These accounts were located and managed in New York. Thus, there is a sufficient nexus between the transaction of the business and the claim to comply with the requirements of N.Y. C.P.L.R. § 302(a).
 
 
 33
 Finally, the constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements. See United States v. Montreal Trust Co., 358 F.2d 239, 242 (2d Cir.1966).
 
 
 34
 b) Venue
 
 
 35
 The Investors also argue that the district court erred in denying their motion to transfer venue to the S.D. Fla. We review a denial of a motion to transfer venue for abuse of discretion. A. Olinick & Sons v. Dempster Bros., Inc., 365 F.2d 439, 444 (2d Cir.1966).
 
 
 36
 We find that venue was proper in the S.D.N.Y. As discussed above, the Cash Account Agreements signed by the Investors specifically designate New York state and federal courts as proper fora to contest or confirm awards. Section 9 of the Federal Arbitration Act ("FAA") states that venue is appropriate in any jurisdiction to which the parties have agreed. 9 U.S.C. § 9. As discussed, the Cash Account Agreements make venue appropriate in the S.D.N.Y.
 
 
 37
 Even without the forum-selection clauses in the Cash Account Agreements, venue in the S.D.N.Y. would be appropriate. In Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., the Supreme Court held that the FAA's venue provision must be read permissively to allow a motion to confirm, vacate, or modify an arbitration award either where the award was made or in any district proper under the general venue statute, 28 U.S.C. § 1391. 529 U.S. 193, 195, 204, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000). As this matter was before the district court based on diversity jurisdiction under 28 U.S.C. § 1332, the applicable venue statute provides that:
 
 
 38
 [a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
 
 
 39
 28 U.S.C. 1391(a).
 
 
 40
 For present purposes, Section 1391(a)(2) is dispositive. "[A] substantial part of the events or omissions giving rise to the claim occurred" in the S.D.N.Y. Under Cortez, with regard to enforcement of arbitration awards, the "events giving rise to the claim" are those events giving rise to the claim resolved in the arbitration, not just the arbitration proceeding itself. Cortez, 529 U.S. at 198, 120 S.Ct. 1331. The fraud and manipulation alleged by the Investors involved conduct by Broker relating to securities traded on the New York exchanges or underwritten by Broker itself ("house stocks"), and the alleged breaches of fiduciary duties and negligent supervision arose out of Broker's conduct in New York. Thus, venue in the S.D.N.Y. was appropriate.
 
 
 41
 Although venue would also have been proper in Florida, the district court in the S.D.N.Y. did not abuse its discretion by refusing to transfer the case. See Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir.1992) (noting that the venue statute does not require the district court to determine the best venue, only a suitable one). Broker filed its New York Petition before the Investors filed their Florida Petition. As such, the first-filed rule weighs in favor of the S.D.N.Y. action. "[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." First City Nat'l Bank & Trust v. Simmons, 878 F.2d 76, 79 (2d Cir.1989) (internal quotations, citation, and alterations omitted).
 
 
 42
 The Investors claim that Broker commenced this action through an improper anticipatory filing during settlement talks and that this constitutes special circumstances sufficient to preclude application of the first-filed rule. See Ontel Prods., Inc. v. Project Strategies Corp., 899 F.Supp. 1144, 1150 (S.D.N.Y.1995). However, even assuming that the claimed circumstances are special, the only evidence of settlement discussions — an April 7, 2003, fax rejecting a settlement offer but stating that "there may be some basis to conclude a settlement" — does not show active settlement discussions with the Investors. Moreover, Broker filed its New York Petition in the face of a quickly approaching deadline, after which it would not have had the right to contest the arbitration award at all. See 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."). With the deadline looming, the Investors could not have been surprised by Broker's filing.
 
 
 43
 Finally, the Investors have not satisfied their burden under 28 U.S.C. § 1404(a) by showing that transfer was warranted "for the convenience of the parties and witnesses, in the interest of justice." District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis. In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992). Some of the factors a district court is to consider are, inter alia: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." Albert Fadem Trust v. Duke Energy Corp., 214 F.Supp.2d 341, 343 (S.D.N.Y.2002). Applying these factors, the district court was well within its discretion in denying the Investors' requested venue transfer. First, Broker chose New York as its forum, a decision that is given great weight. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Second, New York is a convenient forum for all the parties: the Investors have homes in New Jersey and have at times claimed to be New Jersey residents; Broker is located in New York. Finally, documents and other evidence regarding the arbitral award are freely available in New York. Thus, the Investors cannot convincingly argue that New York is an inconvenient forum.[1]
 
 
 44
 c) Default Judgment
 
 
 45
 The Investors advance several arguments as to why the district court's entry of default judgment should be set aside. In considering these, we review the district court's decision for abuse of discretion. Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 171 (2d Cir.2001) (quotation marks and citation omitted).
 
 1. The Investors' Obligation to Respond
 
 46
 The Investors argue that a default judgment was inappropriate because they had no obligation to respond to the removed New York Petition. Their position is that the Petition constituted a motion and that Fed.R.Civ.P. 55(a) and 81(c) apply only to removed actions begun by a complaint and not to motions. The Investors also note that the district court never ordered them to respond to the New York Petition and never held a status conference to set a briefing schedule. They further note that Broker failed to comply with Local Rule 7.1 by not including a memorandum of law. We agree that the removed New York Petition should have been treated as a motion but disagree that the Investors had no obligation to respond.
 
 
 47
 Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Rule 55 "tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir.2004). Like all general provisions of the Federal Rules, Rule 55 is meant to apply to "civil actions," Fed.R.Civ.P. 2, where only the first step has been taken — i.e., the filing of a complaint — and the court thus has only allegations and no evidence before it.
 
 
 48
 We agree with the Investors that Rule 55 does not operate well in the context of a motion to confirm or vacate an arbitration award. See, e.g., N.Y. Typographical Union No. 6 v. AA Job Printing, 622 F.Supp. 566, 567 (S.D.N.Y.1985) (citing Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir.1983)). As the very name implies, they are motions in an ongoing proceeding rather than a complaint initiating a plenary action. 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."); Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc., 23 F.3d 41, 46 (2d Cir.1994) (noting that a district court "properly treated [a petition to the court for modification of an arbitration award] as a motion in accordance with the express provisions of the FAA").
 
 
 49
 Rule 81(c) also appears to speak only to actions begun by service of a complaint. Moreover, Rule 81(a)(3) recognizes that the Federal Arbitration Act may govern procedures relating to arbitral awards, and the provisions of that Act dictate the treating of the removed New York Petition as a motion.
 
 
 50
 However, treating the Petition as a motion does not lead to the conclusion that the Investors could simply await some initiative by the Broker or the court.[2] Removed proceedings arrive in federal court in the procedural posture they had in state court. Sun Forest Corp. v. Shvili, 152 F.Supp.2d 367, 387 (S.D.N.Y.2001) ("It is well established that the district court `takes the [removed] action in the posture in which it existed when it is removed from a state's court jurisdiction and must give effect to all actions and procedures accomplished in a state court prior to removal.'") (quoting Miller v. Steloff, 686 F.Supp. 91, 93 (S.D.N.Y.1988)). The New York Petition contained a return date and, as allowed by Section 403(b) of the New York C.P.L.R., a demand for service of the response seven days before the return date. N.Y.C.P.L.R. § 403(b) ("An answer shall be served at least seven days before [the time of hearing specified in the notice of petition] if a notice of petition served at least twelve days before such time so demands . . . ."). The Investors removed the Petition after the due date for the response but before the return date. When the New York Petition arrived in federal court, its posture was unchanged: a motion with a return date. Sun Forest Corp., 152 F.Supp.2d at 387. That, indeed, is the logical outcome of the Investors' insistence that the Petition is a motion and not a complaint implicating Rule 55. The Investors, therefore, should have responded in some fashion, e.g., by seeking an extension, arguing the merits, raising jurisdictional or venue objections, etc. We trust that parties faced with this or similar situations in the future will take counsel from our remarks.
 
 
 51
 But, given the prior dearth of caselaw on the treatment of removed petitions to confirm or vacate arbitration awards, the Investors are entitled to some slack. Nevertheless, whatever confusion existed as to the need to address the merits was dispelled by the clerk's entry of default, a concentration-focusing event that calls for a party to lay all its cards on the table. Indeed, a meritorious claim or defense is always relevant to a motion seeking avoidance or vacatur of a default. See Pecarsky, 249 F.3d at 171 ("When deciding whether to relieve a party from default or default judgment, we consider the willfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted."). Therefore, we believe that all arguments going to the merits of confirming or vacating the award should have been raised in the Investors' motion to vacate the clerk's entry of default. However, that motion was accompanied by cross motions to dismiss or transfer and focused almost exclusively on why the New York Petition should not be decided by the S.D.N.Y. The Investors' memorandum of law did note the relevance of the merits to the default issues and argued, although briefly, that, because Broker had never informed the arbitrators of the impropriety of prejudgment interest on punitive damages, the award of such interest did not taint the award. Although the Investors' papers noted the existence of their Florida Petition to vacate the award, they failed at any time to inform the S.D.N.Y. of their view that Florida law required an increase in the damages. While this issue was briefed in their post-judgment Rule 59(e) motion, we believe that, given the ample notice of the peril of treating the S.D.N.Y. proceeding as one that would soon go away, this was an untimely raising of the issue. A district court facing a motion to vacate the clerk's default in these circumstances is more than justified in believing that it has heard whatever the movant has to say on the merits.
 
 2. Appropriateness of a Default Judgment
 
 52
 We conclude that default judgments in confirmation/vacatur proceedings are generally inappropriate. A motion to confirm or vacate an award is generally accompanied by a record, such as an agreement to arbitrate and the arbitration award decision itself, that may resolve many of the merits or at least command judicial deference. When a court has before it such a record, rather than only the allegations of one party found in complaints, the judgment the court enters should be based on the record. It does not follow, of course, that the non-movant can simply ignore such a motion. If the non-movant does not respond, its failure to contest issues not resolved by the record will weigh against it.
 
 
 53
 In the present matter, the district court had before it the written contracts between the Investors and Broker, the NASD Uniform Submission Agreements, the award rendered by the NASD arbitration panel, and the order denying recalculation of the award. All were attached to Broker's New York Petition. A default judgment was inappropriate in light of this record. Rather, the petition and accompanying record should have been treated as akin to a motion for summary judgment based on the movant's submissions. To be sure, the Investors failed to respond, but the lack of a response does not justify a default judgment because, even where a non-moving party fails to respond to a motion for summary judgment, a court
 
 
 54
 may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.
 
 
 55
 Vt. Teddy Bear Co., 373 F.3d at 244 (internal quotation marks and citations omitted); see also United States v. One Piece of Property, 5800 S.W. 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir.2004) [hereinafter "One Piece of Property"] ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion."). Even unopposed motions for summary judgment must "fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." Vt. Teddy Bear Co., 373 F.3d at 244 (quoting Champion v. Artuz, 76 F.3d 483, 486 (2d Cir.1996)) (internal quotation marks omitted).
 
 
 56
 d) Merits of the New York Petition
 
 
 57
 In sum, we hold that the removed New York Petition was in substance a motion, that the presence of a return date required the Investors to respond and that generally a district court should treat an unanswered removed petition to confirm/vacate as an unopposed motion for summary judgment. However, under the circumstances here, the Investors' argument on the merits in response to the Clerk's default should be considered. Therefore, the motion to confirm should be treated as unopposed, and the motion to vacate should be treated as opposed on the ground that the arbitrators were never informed of the rule against prejudgment interest on punitive damages.
 
 
 58
 Normally, confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir.1984), and the court "must grant" the award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The arbitrator's rationale for an award need not be explained, and the award should be confirmed "`if a ground for the arbitrator's decision can be inferred from the facts of the case,'" Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir.1991) (quoting Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1216 (2d Cir.1972)). Only "a barely colorable justification for the outcome reached" by the arbitrators is necessary to confirm the award. Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union, 954 F.2d 794, 797 (2d Cir.1992). A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high. Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir.1997) [hereinafter "Willemijn"].
 
 
 59
 One of the grounds for which an award may be vacated — and that argued by Broker in its New York Petition with regard to the prejudgment interest award on punitive damages — is manifest disregard of the law. Wilko v. Swan, 346 U.S. 427, 436-37, 74 S.Ct. 182, 98 L.Ed. 168 (1953), rev'd on other grounds, Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 485, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). A party seeking to vacate an arbitration award on the basis of manifest disregard of the law must satisfy a two-pronged test, proving that: "(1) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator was well defined, explicit, and clearly applicable to the case." Hoeft v. MVL Group, Inc., 343 F.3d 57, 69 (2d Cir.2003) (internal quotation marks and alterations omitted).
 
 
 60
 Manifest disregard of the law "clearly means more than error or misunderstanding with respect to the law." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986). The party challenging an award for manifest disregard of the law must demonstrate that the arbitrator actually knew about the relevant rule of law. A showing that the average person qualified to be an arbitrator would know the particular rule is insufficient to that end. DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d Cir.1997) ("[T]he term `disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it."). DiRussa rejected the argument that manifest disregard could be satisfied by showing that "the controlling legal principle and subsequent error is so obvious to the average qualified arbitrator that any different conclusion is absurd," even though there was "no persuasive evidence that the arbitrators actually knew of—and intentionally disregarded" —the law. Id. at 822-23; see also Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir.2004) (noting that manifest disregard was shown where arbitrators cited Second Circuit precedent but explicitly declined to apply it); Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 390 (2d Cir.2003) (including in the manifest disregard test "a subjective element, that is, the knowledge actually possessed by the arbitrators. . . . In determining an arbitrator's awareness of the law, we impute only knowledge of governing law identified by the parties to the arbitration.").
 
 
 61
 It is true that we have stated that "a court may infer that the arbitrators manifestly disregarded the law if it finds that the error made by the arbitrators is so obvious that it would be instantly perceived by the average person qualified to serve as an arbitrator." Willemijn, 103 F.3d at 13. However, the meaning of that phrase in the context of Willemijn was that an arbitrator's error in interpreting the legal doctrine relied upon by the parties can constitute manifest disregard if the average person qualified to serve as an arbitrator would not have made such an interpretation. Id. at 14 ("We only need decide whether there is any colorable justification for their decision"; if so, there is no manifest disregard.).[3]
 
 
 62
 The district court vacated that portion of the arbitral award that granted prejudgment interest on punitive damages to the Investors because it found it to be in manifest disregard of the law. We review this decision de novo. Wallace, 378 F.3d at 189; Hoeft, 343 F.3d at 69. The Broker failed to inform the arbitrators that prejudgment interest on punitive damages was unavailable, and there is no other evidence that the arbitrators knew of this rule. Moreover, Broker was on notice that such damages were being sought because, as discussed supra, the Investors changed the phrasing of their claim from a claim for compensatory damages, interest, return of commissions, punitive damages, costs, and attorneys' fees, to a claim for compensatory damages, punitive damages, costs, prejudgment interest, and a finding of a statutory violation. The rephrasing of this claim put the Brokers on notice that prejudgment interest on punitive damages was being sought. As noted, furthermore, Broker responded to the Investors' motion for the arbitrators to recalculate damages, but there is no evidence that Broker informed the arbitrators of the legal error of which they now complain. Because there is no evidence that the arbitrators were aware of the rule against prejudgment interest on punitive damages, their award of such interest was not manifestly contrary to law.
 
 
 63
 Because the Broker's motion to confirm was unopposed, confirmation of the entire arbitral award is appropriate. The Investors claim a violation of their due process rights in that the S.D.N.Y.'s confirmation of the arbitration award "block[ed]" consideration of their Florida Petition to vacate the damage portion of the award. When the S.D.N.Y. rendered its decision on the New York Petition, the Florida Petition was pending in the S.D. Fla. and is now pending before the S.D.N.Y. This argument is a concession— albeit a necessary one—that the claims raised in the Florida Petition are barred by res judicata in light of the S.D.N.Y. decision, a conclusion fortified by our decision affirming the confirmation.
 
 
 64
 "Under the doctrine of res judicata, or claim preclusion, `[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir.2000) (quoting Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)); see also Legnani v. Alitalia Linee Aeree Italiane, S.p.A., 400 F.3d 139, 141 (2d Cir.2005) ("`[T]he first judgment will preclude a second suit only when it involves the same `transaction' or connected series of transactions as the earlier suit . . . .'" (quoting Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir.1997))).
 
 
 65
 However, the Investors took no step in the S.D.N.Y. to seek vacatur of the damage award, and, even when faced with a default judgment confirming the damage award, never brought to the S.D.N.Y.'s attention the pertinent Florida statutes. Because they failed to do so, they cannot, now that a final decision on the merits has been reached, seek to attack that decision by asserting the Florida Petition's claims. We follow The Hartbridge, which concluded that:
 
 
 66
 Upon a motion to confirm the party opposing confirmation may apparently object upon any ground which constitutes a sufficient cause under the statute to vacate, modify, or correct, although no such formal motion has been made. . . . As we understand the statute a motion to confirm puts the other party to his objections. He cannot idly stand by, allow the award to be confirmed and judgment thereon entered, and then move to vacate the award just as though no judgment existed.
 
 
 67
 The Hartbridge, 57 F.2d 672, 673 (2d Cir. 1932).
 
 CONCLUSION
 
 68
 For the reasons above, we vacate the district court's grant of default judgment and the district court's order vacating the arbitration award's provision for prejudgment interest on punitive damages. We hold the arbitration award should have been confirmed in full because it was not in manifest disregard of the law. We remand for dismissal of the pending Florida Petition.
 
 
 
 Notes:
 
 
 *
 The Honorable J. Garvan Murtha, United States District Judge for the District of Vermont, sitting by designation
 
 
 [1]
 We note further that the district court in the S.D. Fla., the venue to which the Investors would like to transfer this action, also found the S.D.N.Y. to be the most appropriate venue for this matter. After considering Broker's motion to transfer the Florida Petition to the S.D.N.Y. and "the pertinent portions of the record," the district court, being "fully advised in the premises" of the matter, found that "Florida is not the best venue for this action."
 
 
 [2]
 There was no need for the district court to hold a status conference, set a briefing schedule, or hold a hearing. Such acts are appropriate to ongoing proceedings leading to a trial. As the Investors themselves insist, the New York Petition should have been treated as a motion rather than a complaint. The Local Rules of the S.D.N.Y. do not require hearings for motions and allow them only when "directed by the court by order or by individual rule or upon application." S.D.N.Y. R. 6.1(c)
 Finally, while S.D.N.Y. Local Rule 7.1 does require "all motions . . . [to] be supported by a memorandum of law," Broker's failure to supply such a memorandum does not excuse the Investors from timely responding to the New York Petition. A "district court has broad discretion to determine whether to overlook a party's failure to comply with local rules," Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir.2001), and "[n]othing in . . . the Civil Rules of the Southern District requires a court to" punish a party for noncompliance. Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir.1983). While the Investors' response to the Broker's motion might have sought some relief or sanction for the failure to submit a memorandum, the failure did not obviate the need to respond.
 
 
 [3]
 The phrase was also quoted inDuferco, 333 F.3d at 390; however, in that case the alleged error was an internally inconsistent application of law in the arbitration award, an error that, according to the appellant, would have been obvious to any person qualified to serve as an arbitrator. The issue was not whether the arbitrators were aware of the governing law.