23-7326 (L)
*Key Inv. Servs. LLC v. Oliver*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of May, two thousand twenty-five.

PRESENT:
> AMALYA L. KEARSE,
> DENNY CHIN,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

_____

KEY INVESTMENT SERVICES LLC,

> *Plaintiff-Appellant-Cross-Appellee*,

v.

JOSH W. OLIVER,

> *Defendant-Appellee-Cross-Appellant*.

Nos. 23-7326 (L)
23-7547 (XAP)

_____

| For Plaintiff-Appellant-Cross-Appellee: | JEFFREY S. DUNLAP, UB Greensfelder LLP, Cleveland, OH (Michael J. Charlillo, UB Greensfelder LLP, Cleveland, OH; Andrew S. Kazin, Bronster LLP, New York, NY, *on the brief*). |
|---|---|
| For Defendant-Appellee-Cross-Appellant: | DAVID E. DOBIN (Richard Slavin, *on the brief*), Cohen and Wolf, P.C., Bridgeport, CT. |

Appeal from a judgment of the United States District Court for the District of Connecticut (Victor A. Bolden, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the September 8, 2023 judgment is **AFFIRMED**.

Key Investment Services LLC ("KIS") appeals from the district court's judgment denying its motion to vacate a final arbitration award and granting a motion by Josh W. Oliver, a former financial advisor at KIS, to confirm that arbitration award. Oliver cross-appeals only with respect to the district court's failure to expressly include in the judgment an award of post-judgment interest pursuant to 28 U.S.C. § 1961. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision below.

## I.    Background

In November 2019, Oliver commenced a Financial Industry Regulatory Authority ("FINRA") arbitration proceeding against KIS, alleging, among other things, that KIS had made false and defamatory statements about the circumstances of Oliver's departure from KIS on the Uniform Termination Notice for Securities Industry Registration Form ("Form U-5") that it filed with FINRA in 2019.[1]    In his statement of claim, Oliver sought the following forms of relief: expungement of the defamatory Form U-5 statements; damages for compensation lost due to the hostile and retaliatory work environment that he experienced while employed at KIS; damages for compensation lost due to the defamatory Form U-5 statements, which he asserted prevented him from obtaining comparable employment with other broker-dealer firms; punitive damages; and "[a]ll other damages and remedies the panel sees fit to award."    J. App'x at 130.    The parties thereafter entered into a FINRA Arbitration Submission Agreement, under which they agreed to "submit the present matter in controversy, as set forth in [Oliver's]

---

[1] FINRA requires its members to file a Form U-5 "when a registered representative of a firm departs therefrom for any reason."   *Daly v. Citigroup Inc.*, 939 F.3d 415, 419 (2d Cir. 2019).   A Form U-5 is then "available in the FINRA database, which allows FINRA members to search for information about individual financial professionals."   *Id.*

statement of claim [and] [KIS's] answers[,] . . . to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure." *Id.* at 178, 180.

Following a six-day hearing at which the parties presented testimony and other evidence, a unanimous three-member FINRA panel (the "Panel") issued an award (the "Award") ordering KIS to pay Oliver "$623,000.00 in compensatory damages," "$294,800.00 in attorneys' fees," and "$100,000.00 in damages for violation of FINRA Regulatory Notice 10-39 [('FINRA Notice 10-39')]." *Id.* at 11. The Award further "recommend[ed] expungement" of the Form U-5 statements "based on the defamatory nature of the information." *Id.* at 12. KIS thereafter commenced an action in the district court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, to vacate the Award, which Oliver cross-moved to confirm. On September 8, 2023, the district court denied KIS's motion to vacate, granted Oliver's cross-motion to confirm, and entered a judgment for Oliver in the amount of $1,104,577.90. That judgment award included a calculated amount of pre-judgment interest but omitted any express mention of post-judgment interest. This appeal and cross-appeal followed.

4

## II. The Arbitration Award

### A. Standard of Review

On appeal of a district court's decision to confirm or vacate an arbitration award, we review questions of law *de novo* and findings of fact for clear error. *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013). In light of the FAA's "strong presumption in favor of enforcing arbitration awards," an award "should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019) (internal quotation marks omitted). Accordingly, "[t]he party moving to vacate an award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 378 (2d Cir. 2023) (internal quotation marks omitted).

Under the FAA, "an arbitral decision may be vacated where the 'arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 161 (2d Cir. 2021) (quoting

9 U.S.C. § 10(a)(4)). In assessing an arbitral award, we "focus[] on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002) (internal quotation marks omitted). We "have consistently accorded the narrowest of readings to the FAA's authorization to vacate awards pursuant to [section] 10(a)(4)" and will overturn an arbitrator's determination only where he "acts outside the scope of his contractually delegated authority – issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract." *Beijing Shougang Mining Inv. Co.*, 11 F.4th at 161 (alteration accepted and internal quotation marks omitted).

Additionally, "we have held that the court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted). An arbitration award "manifestly disregards the law," however, "only in those exceedingly rare instances where" "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored

6

by the arbitrators was well-defined, explicit, and clearly applicable to the case."

*Smarter Tools Inc.*, 57 F.4th at 383 (internal quotation marks omitted).

**B. Discussion**

On appeal, KIS asserts that the Award must be vacated because the Panel both exceeded the scope of its authority and manifestly disregarded the law in various ways. We address each argument in turn.

*1. Award of Damages for a Violation of FINRA Notice 10-39*

First, KIS argues that the Panel exceeded its authority and manifestly disregarded the law by awarding Oliver $100,000 in damages for violating FINRA Notice 10-39. According to KIS, Oliver never asserted any claim for relief arising under FINRA Notice 10-39, and; in fact, a FINRA arbitration panel lacks the authority to award damages for a violation of the applicable FINRA rules and regulations. We are not persuaded.

To begin, KIS makes much of the fact that Oliver did not assert a claim or seek relief based on KIS's failure to comply with FINRA Notice 10-39, which "reminds firms of their obligation to provide timely, complete and accurate information" on a Form U-5 as required by article V, section 3 of the FINRA By-Laws. While it is true that an arbitrator may exceed its authority by "considering

7

issues beyond those the parties have submitted for [its] consideration," *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011), courts have recognized that "[a]ny issue that is 'inextricably tied up with the merits of the underlying dispute' may properly be decided by the arbitrator," *Dighello v. Busconi*, 673 F. Supp. 85, 87 (D. Conn. 1987) (quoting *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 523 (2d Cir. 1980)), *aff'd*, 849 F.2d 1467 (2d Cir. 1988). Here, there is no question that the issue of KIS's compliance with FINRA Notice 10-39 directly bore on Oliver's defamation claim. During the arbitration, Oliver pointed to the notice as critical to his claim, since it explained how KIS was required to submit truthful and complete information on Oliver's Form U-5 – and to update that information upon learning facts that would render its prior filing inaccurate or incomplete – after Oliver's departure. KIS, in turn, asserted in its defense that it had complied with its FINRA obligations as reflected in that notice. Indeed, KIS does not meaningfully explain how the Panel could have awarded damages for defamation – as it did in this case – without first concluding that KIS had run afoul of FINRA Notice 10-39 when it filed and later amended Oliver's Form U-5.

In the end, KIS's challenge boils down to the contention that the Panel lacked the authority to decide whether there was a violation of FINRA's rules and

8

regulations, and; if so, what award flowed from such a violation. *See Jock*, 646 F.3d at 122 ("[A]n arbitrator may exceed her authority by . . . reaching issues clearly prohibited by law or by the terms of the parties' agreement."). But KIS points to no clear authority explaining that FINRA arbitration panels are "categorically bar[red]" from doing so. *Id.* at 124. That failure is effectively dispositive here because as the Supreme Court has explained, "[so] long as the arbitrator is even *arguably* construing or applying the [agreement] and acting within the scope of his authority, . . . serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (emphasis added); *see also DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997) (rejecting the argument that the arbitration panel exceeded its powers by "decid[ing] not to award a statutorily required remedy" (internal quotation marks omitted)). Nor can we say that, in these circumstances, the Panel so "stray[ed] from interpretation and application of the agreement and effectively dispense[d] [its] own brand of industrial justice." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (internal quotation marks omitted). Indeed, there is little fear that the Award "reflects [the Panel's] own notions of economic justice" when, as the district court observed, the $723,000 in total "damages"

9

awarded to Oliver neatly corresponds to the $722,284 that Oliver's expert calculated to be his lost compensation caused by KIS's statements on the Form U-5 from April 26, 2019, through August 1, 2022. *See Beijing Shougang Mining Inv. Co.*, 11 F.4th at 161 (alterations accepted and internal quotation marks omitted).

For these reasons, we cannot say that KIS met its "very high" burden of showing that the Panel exceeded its authority in issuing the $100,000 separate award in the way that it did. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).[2]

### 2. *Award of Attorneys' Fees*

KIS next contends that the Panel manifestly disregarded the law by awarding Oliver $294,800 in attorneys' fees. According to KIS, the Panel based its award on Connecticut case law permitting the recovery of fees only as punitive damages, even though it "specifically denied" Oliver's request for punitive damages elsewhere in the Award. KIS Br. at 26. Again, we disagree.

In directing KIS to pay $294,800 in attorneys' fees, the Panel explicitly cited three Connecticut Supreme Court decisions that, taken together, provide a basis

---

[2] To the extent that KIS separately contends that the Panel manifestly disregarded the law in awarding damages on this basis, that argument fails because KIS cannot show that the Panel "knew of a governing legal principle yet refused to apply it or ignored it altogether." *Smarter Tools Inc.*, 57 F.4th at 383 (internal quotation marks omitted).

for the award of attorneys' fees as punitive damages upon a finding of liability in a defamation case. *See* J. App'x at 11 (citing *Vandersluis v. Weil*, 176 Conn. 353, 358 (1978) (restricting punitive damages to the "cost of litigation less taxable costs of the action being tried"); *Gleason v. Smolinski*, 319 Conn. 394, 432 (2015) (explaining that punitive damages require proof of actual malice); *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 628 (2009) (same)).[3] As KIS itself acknowledges, these cases "concerned the right to recover [attorneys'] fees as punitive damages." KIS Br. at 28 & n.4; *see id.* at 29 ("[T]he cases on which the panel relied made clear that attorneys' fees are awardable as a punitive damages claim."). By correctly citing, and adhering to, controlling state law that supports an award of attorneys' fees in a defamation case like this one, the Panel did not "willfully flout[] the governing law." *Seneca Nation of Indians v. New York*, 988 F.3d 618, 626 (2d Cir. 2021) (internal quotation marks omitted).

---

[3] In their briefing on appeal, the parties implicitly dispute, as they did in the arbitration proceeding, which state's law applies to Oliver's claims: KIS contends that Ohio law governs, because KIS is a limited liability company organized and headquartered in that state, while Oliver points to the law of Connecticut, the state in which he is domiciled. The Panel did not explicitly resolve this question, but cited to Connecticut case law in the Award. KIS has not argued before the district court or on appeal that the Panel applied the wrong state's law, and in any event, KIS concedes that the Ohio law and Connecticut law are consistent with one another as they relate to Oliver's claims and the parties' arguments on appeal. For all these reasons, we cite to Connecticut case law in this Order.

Ultimately, KIS's argument hinges on its interpretation of the Award section's final provision: "Any and all claims for relief not specifically addressed herein, including any requests for punitive damages, are denied." J. App'x at 12. KIS reads this sentence to mean that the Panel expressly refused to award punitive damages, notwithstanding the cases it cited concerning attorneys' fees. But as we have previously explained, "where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003). That is the case here. Given the explicit award of attorneys' fees – which, as the Panel correctly recognized, are permitted as punitive damages under Connecticut law – the Award section can be read as having already "specifically addressed" punitive damages "[t]herein." J. App'x at 12; *see also Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 44–45 (2d Cir. 1997) ("Internal inconsistencies in the opinion are not grounds to vacate the award notwithstanding [appellant's] plausible argument that the arbitrator's decision was misguided or our own concerns regarding the arbitrator's conclusion."). We therefore decline to find any manifest disregard of the law on these grounds, infer that the panel granted

12

attorneys' fees in conformity with cases where attorneys' fee awards were approved as punitive damages, and decline KIS's invitation to treat attorneys' fees as a claim for relief "not specifically addressed" in the Award.

### 3. The Panel's Determination of Liability

KIS also contends that the Panel manifestly disregarded applicable defamation law by holding it liable despite: (1) in KIS's view, the lack of any false statements in the Form U-5, and (2) the Panel's failure to make an express finding of actual malice, which KIS contends is necessary to overcome the qualified privilege that attaches to a Form U-5. For similar reasons, KIS has not met its heavy burden with respect to either argument.

Under Connecticut law, "for a claim of defamation to be actionable, the statement must be false," and "truth is an affirmative defense." *Gleason*, 319 Conn. at 431 (internal quotation marks omitted). During the arbitration proceeding, KIS asserted that Form [U-5] "statements are subject to a qualified privilege." J. App'x at 190 n.8 (citing *Galligan v. Edward D. Jones & Co.*, No. 389623, 2000 WL 1785041, at *13 (Conn. Super. Ct. Nov. 13, 2000)); *see also Galligan*, 2000 WL 1785041, at *13 (explaining that the privilege generally applies "when one acts in the *bona fide* discharge of a public or private duty" and is warranted in this

13

context because "[FINRA] members are required to state the reason for termination on the [Form] U-5" but "if they state a reason discreditable to the employee they may be sued for libel" (internal quotation marks omitted)). But a qualified privilege can be overcome with "a showing of either actual malice, *i.e.*, publication of a false statement with actual knowledge of its falsity or reckless disregard for its truth, or malice in fact, *i.e.*, publication of a false statement with bad faith or improper motive." *Gambardella*, 291 Conn. at 630 (emphases omitted).

The Panel's failure to provide detailed factual findings or legal conclusions does not evince manifest disregard of the law. For starters, the parties did not request an "explained decision" – that is, a "fact-based award stating the general reason(s) for the arbitrator's decision" – as they could have under the applicable FINRA Rules. FINRA Rule 13904(g); *cf.* FINRA 13904(a)-(f) (setting forth the default requirements of an award and providing that it "*may* contain a rationale underlying the award" (emphasis added)). Moreover, our case law makes clear that, as a general matter, "[t]he arbitrator's rationale for an award need not be explained." *D.H. Blair & Co.*, 462 F.3d at 110. Thus, "[e]ven where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground

14

for the decision can be inferred from the facts of the case." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (internal quotation marks omitted). Here, we can infer – based on the falsity and qualified privilege arguments made by KIS during the arbitration proceedings, the evidence presented regarding KIS's conduct in making (and investigating the basis for) the statements contained in the Form U-5, and the Panel's decision to award attorneys' fees based on controlling Connecticut law – that the Panel concluded that KIS made false statements on the Form U-5 and, at the very least, acted with a reckless disregard of the truth in doing so.[4] *See Smarter Tools Inc.*, 57 F.4th at 383 (requiring only a "barely colorable justification for the outcome reached" (emphasis and internal quotation marks omitted)).

In the end, KIS's arguments amount to little more than assertions that the Panel improperly evaluated the evidence, not that it manifestly disregarded the relevant principles of defamation law. But we do "not recognize manifest disregard of the *evidence* as proper ground for vacating an arbitrator's award."

---

[4] KIS contends that we cannot infer a finding of actual malice to overcome the qualified privilege because the Panel explicitly declined to award punitive damages, which under Connecticut law similarly requires proof of actual malice. But that argument fails for the reasons set forth above with respect to the award of attorneys' fees. Indeed, in awarding attorneys' fees, the Panel cited Connecticut case law explaining that a punitive damages award requires proof of actual malice, which supports the inference that the Panel found such malice on the part of KIS.

*Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004) (emphasis added) (internal quotation marks omitted); *see also id.* (explaining that a "federal court may not conduct a reassessment of the evidentiary record" to vacate an award on the grounds that it "runs contrary to strong evidence favoring the party bringing the motion to vacate the award" (internal quotation marks omitted)).  Even if we were convinced that the "[P]anel made the wrong call" in applying defamation law to the facts of this case, that is no basis to vacate the Award.  *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 407 (2d Cir. 2009) (internal quotation marks omitted).

### 4. *Consideration of Withdrawn Claims*

Finally, KIS contends that the Panel exceeded its authority by considering Oliver's claims for retaliation and a hostile work environment, even though he had abandoned those claims during the arbitration hearing.   We disagree with KIS's characterization of the Award.   As a plain reading of the Award makes clear, the reference to these claims appears only in the "Relief Requested" section, which simply recites the requests for damages that Oliver included in his original statement of claim.  J. App'x at 11.   Because the "Award" section itself does not identify any of those claims in awarding damages, there is no reason to conclude

that the Panel's Award was designed to compensate Oliver for the retaliation and hostile work environment claims that he withdrew.

## III. Post-Judgment Interest

Oliver cross-appeals only the district court's failure to specify, in the judgment, an award of post-judgment interest. "Pursuant to 28 U.S.C. § 1961, the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 129 (2d Cir. 2023) (internal quotation marks omitted) (holding that a judgment that does not specify an entitlement to post-judgment interest should be understood to include such interest, which is mandatory pursuant to section 1961); *see also Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) ("[Section 1961's] terms do not permit of the exercise of judicial discretion in its application." (internal quotation marks omitted)). Accordingly, "we understand the district court's order to include post-judgment interest on the awarded fees and costs" and thus "affirm the judgment based on that understanding." *H.C.*, 71 F.4th at 129.

\*   \*   \*

We have considered KIS's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court, which we construe to include an award of post-judgment interest, is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

18