In Matter of ARBITRATION BE-TWEEN INTERDIGITAL COMMU-NICATIONS CORPORATION, and Interdigital Technology Corporation, Petitioners,

and

SAMSUNG ELECTRONICS CO., LTD., Respondent.

No. 06 Civ. 6833(RJS).

United States District Court, S.D. New York.

Dec. 4, 2007.

Sammi Malek, Esq., Glenn Colton, Esq., and Michael Levin, Esq., of Wilson Sonsini Goodrich & Rosati, New York, NY, and Mark D. Flanagan, Esq., and Nathan L. Walker, Esq., of Wilmer Cutler Pickering Hale & Dorr LLP, Palo Alto, CA, for Interdigital.

Amber Rovner, Esq., David J. Healey, Esq., and Larry Thompson, Esq., of Weil, Gotshal & Manges, LLP, Houston, TX, and Tarra L. Zynda, Esq., of Weil, Gotshal & Manges LLP, New York, NY, for Samsung.

MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge.

Petitioners Interdigital Communications Corporation and Interdigital Technology Corporation [1] bring this action to confirm an arbitration award (the "Award") rendered in their favor by a three-member arbitration panel (the "Panel"). The Panel found respondent Samsung Electronics Co., Ltd. ("Samsung"), liable for $134 million in royalty payments to Interdigital. Samsung cross-moves to vacate the Award. For the following reasons, the Court confirms the Award in its entirety and denies Samsung's application to vacate the Award.

## I. BACKGROUND

The following facts are drawn from the parties' respective submissions, including the various agreements submitted to the Panel and two other arbitral awards relevant to the instant dispute. They do not constitute findings of fact by the Court, and are undisputed unless otherwise noted.

---

1. For the purpose of convenience, the Court refers to the two Interdigital parties collec-tively as "Petitioner" or "Interdigital."

## A. The Parties' Agreements

Interdigital is a developer of wireless telecommunications technology that derives revenue from numerous patent licensing agreements. (Interdigital's Stmt. of Facts ("Interdigital's Stmt.") ¶ 7; Samsung's Response to Pet's Stmt. of Facts ("Samsung's Stmt.") ¶ 7.) Samsung is a manufacturer of wireless handsets ("handsets"). (*See* Samsung Patent Licensing Agreement ("Samsung PLA") § 2.1.)

In late 1995, Interdigital and Samsung entered into a series of agreements, including, *inter alia*, (1) a patent licensing agreement, wherein Samsung received a worldwide, nonexclusive license under Interdigital's patents directed to the digital cellular technology known as "TDMA"[2] (the "Samsung PLA"); and (2) an agreement setting forth certain terms and conditions that apply to the PLA (the "Master Agreement"). (Interdigital's Stmt. ¶ 7; Samsung's Stmt. ¶ 7; *see* Samsung PLA; Master Agreement.) The Samsung PLA required Samsung to pay royalties to Interdigital on a rate schedule set forth therein, based on the number of handsets sold. (Samsung PLA §§ 6.1, 6.2.1.)

The Samsung PLA also contained a "Most Favored Licensee" clause, which provided that the royalty rates paid by Samsung under the Samsung PLA could be prospectively reduced, under certain circumstances, in order to place Samsung on "equal footing" with another licensee who had negotiated a lower royalty rate with Interdigital (the "equal footing" clause). (*Id.* § 8.4.4.) Under the Samsung PLA, any adjustment to the royalty rate pursuant to the "equal footing" clause would take effect beginning on the date the second agreement was executed. (*Id.* § 8.2.)

In addition, the Master Agreement between the parties contained an arbitration clause, which provided that:

> In the event the parties fail for any reason to resolve any claim or dispute . . ., such claim or dispute shall be resolved by binding arbitration in accordance with the then prevailing rules for commercial arbitration of the International Chamber of Commerce (Paris) (hereinafter "ICC") . . . .

(Master Agreement § 5.2.)

## B. The Nokia PLA

On January 29, 1999, Interdigital entered into three related agreements with Nokia, another manufacturer of handsets, including: (1) a long-term cooperation agreement for the development of a technology known as "3G"; (2) a patent licensing agreement (the "Nokia PLA"); and (3) an agreement setting forth certain terms and conditions of the Nokia PLA and the "3G" agreement. (*See* Nokia PLA.)

Under the Nokia PLA, Nokia's royalty payment obligation was divided into two time periods: "Period 1" referred to royalty payments for sales made during the period of January 29, 1999 through December 31, 2001; "Period 2" referred to royalty payments for sales made during the period of January 1, 2002 through December 31, 2006. (Nokia PLA § 3.1; Award at 5.) For Period 1, the Nokia PLA provided that Nokia would pay a lump sum royalty. (Nokia PLA § 3.1.1.) For Period 2, the Nokia PLA provided that Nokia was required to pay royalties "on equivalent terms and conditions" to those paid by the first of Nokia's "Major Competitors" to enter into a "Major Competitor License Agreement" ("MCLA") with Interdigital. (*Id.* at § 3.1.2.)

---

**2.** "TDMA" refers to "Time Division Multiple Access," which is a method of wireless transmission. (Samsung's Brief in Support ("Samsung's Supp. Br.") at 2 n. 4.)

## C. The Samsung I Arbitration

Following the execution of the Nokia PLA, Samsung and Interdigital disagreed about certain issues relating to the Samsung PLA, including: (1) whether and when Samsung had exercised its rights to elect the terms of another agreement— namely, the Nokia PLA—under the "equal footing" clause of the Samsung PLA; and (2) how the terms of the Nokia PLA, if they applied to Samsung under the "equal footing" clause, would be used to adjust Samsung's royalty rates for handsets sold during Period 1. (Award at 24–26.) In February 2002, after the parties failed to resolve their disagreements through negotiations, Interdigital filed a request for arbitration before the ICC pursuant to the Samsung PLA's arbitration clause. (*See* Samsung I Award at 7; Master Agreement § 5.2.)

On or around September 22, 2002 prior to a hearing before the Samsung I arbitration panel Samsung expressly "elected" the Nokia PLA and, thus, sought, pursuant to the "equal footing" clause in the Samsung PLA, to pay royalties for Period 1 and Period 2 sales in an amount adjusted by reference to the Nokia PLA. (*Id.* at 7.) Accordingly, the sole issues presented in the arbitration (hereinafter, the "Samsung I Arbitration") were (1) the effective date of Samsung's election of the Nokia PLA under the "equal footing" clause; and (2) how the Nokia PLA should be used to adjust Samsung's royalty rates for handsets sold during Period 1.[3] (*Id.* at 14–27.) Specifically, with regard to the second issue, because the Nokia PLA provided for a lump sum royalty payment for Period 1 sales but the Samsung PLA provided for

royalty payments for Period 1 sales to be determined by reference to a rate schedule, the Samsung I Arbitration panel (the "Samsung I Panel") had to determine the proper manner in which to convert Nokia's lump sum payment into a royalty rate to be applied to Samsung's Period 1 sales. (*See id.* at 19.)

On December 16, 2002, the Samsung I Panel issued its decision (hereinafter, the "Samsung I Award"). With regard to the first issue, the panel found that the effective date of Samsung's election of the Nokia PLA was January 29, 1999—the date on which Nokia and Interdigital had entered into the Nokia PLA. (*Id.* at 14.) With regard to the second issue, the panel "accept[ed] Samsung's position that [its] entitlement to be placed on an equal footing with Nokia calls for the payment by Samsung of royalty fees that match Nokia's on a per-unit of sales basis." (*Id.* at 22.) Thus, the panel found that Samsung's Period 1 royalty obligation should be calculated "by multiplying the Nokia Period 1 lump sum payment ... by the ratio of Samsung to Nokia sales during Period 1." (*Id.* at 27.)

## D. The Ericsson and Sony Ericsson Patent License Agreements

In March 2003, Interdigital entered into patent license agreements with Ericsson and Sony Ericsson ("SE") (respectively, the "Ericsson PLA" and the "SE PLA") wherein Interdigital collected royalties, respectively, from Ericsson's and SE's sales of TDMA handsets and "wireless infrastructure" during Period 2. (Award at 6–7, 26–31; Zynda Decl. Ex. 5.) In negotiations with Nokia, Interdigital took the position

---

3. Notably, because Interdigital had not entered into an MCLA, as defined by the Nokia PLA, as of the date of the Samsung I Arbitration, the panel in that proceeding did not address Samsung's Period 2 royalty obligation. Indeed, in the award, the panel specifically noted that it had not made any find-ings regarding the parties' obligations with respect to Period 2 sales or the royalty payments relating thereto. (Samsung I at 7 n. 2; Award at 22 (noting that the Samsung I Panel "was ruling on the Period I dispute only ...").)

that SE was a "Major Competitor" within the meaning of the Nokia PLA, and, therefore, the SE PLA should be used to determine Nokia's Period 2 royalty obligation pursuant to the "equivalent terms" clause of the Nokia PLA. (Award at 27.)

Interdigital also asserted that, because Samsung had previously elected the Nokia PLA pursuant to the "equal footing" clause of the Samsung PLA, the SE PLA should similarly be used to determine Samsung's Period 2 royalty obligation. (*Id.* at 7, 13.)

Nokia disputed that SE was a "Major Competitor" under the Nokia PLA and, in July 2003, requested arbitration with Interdigital (hereinafter, the "Nokia Arbitration"). (Nokia Award at ¶ 5.) Similarly, Samsung disputed that the SE PLA should be used to determine its royalty obligations under the "equal footing" clause and, on November 23, 2003, requested arbitration with Interdigital (hereinafter, the "Samsung II Arbitration"). (Award at 1.)

### E. The Nokia Arbitration

In June 2005, the Nokia Arbitration panel issued an award (hereinafter, the "Nokia Award"), wherein it concluded, in relevant part, that the SE PLA should be used to adjust Nokia's Period 2 royalty obligation because (1) SE is a "Major Competitor" to Nokia, and (2) SE's agreement with Interdigital constituted an MCLA under the Nokia PLA.[4] (Nokia Award ¶¶ 28, 48.) Therefore, according to the panel, Nokia was required to pay the "royalty rates" set forth in the SE PLA, after they were "adapted to reflect" Nokia's comparatively higher sales volume. (*Id.* ¶¶ 88–89.) The panel determined that

the royalty rates should be downwardly adjusted by applying the "volume discount" methodology proposed by Nokia's expert, David Kennedy. (*Id.* ¶¶ 88–89.)

Subsequently, Interdigital filed a petition in this Court seeking to confirm the Nokia Award. *See InterDigital Comm'ns Corp. v. Nokia Corp.*, 407 F.Supp.2d 522, 527–28 (S.D.N.Y.2005). In that proceeding, Nokia challenged the entirety of the Nokia Award. *Id.* at 528. On December 28, 2005, the Honorable William J. Pauley, District Judge, rejected Nokia's arguments for vacatur and confirmed the Nokia Award in its entirety. *Id.* at 536.

### F. The Samsung II Arbitration

During the pendency of the Nokia Arbitration, Samsung commenced the Samsung II Arbitration proceedings against Interdigital. In its arbitration request, Samsung asserted that Interdigital had not entered into a license with a "Major Competitor" so as to trigger Samsung's Period 2 royalty obligation. (Samsung's Request for Arbitration (hereinafter, "Samsung's Arb. Req.") ¶¶ 36–37.) Furthermore, Samsung asserted that, if it did owe royalties for Period 2, the royalty rate should be a "blended rate."[5] (*Id.* ¶¶ 38–41.) The parties conducted an evidentiary hearing before the Panel in January 2006, and completed post-hearing briefing in mid-March 2006.

Thereafter, while the parties were awaiting the Samsung II Panel's decision, Nokia and Interdigital executed a settlement agreement on April 27, 2006 (hereinafter, the "Nokia Settlement"). (Nokia Settlement at § 5.a.) Nokia's payments to Interdigital under the Nokia Settlement were

---

4. One of the three panel members dissented from the award. (Nokia Award Dissent at 2.)

5. According to Samsung, the "blended rate" should be determined by combining the respective royalty payments and revenues for

Ericsson and SE under their respective agreements with Interdigital, and then deriving a single "effective rate" to be applied to Samsung's handset sales in Period 2. (*See* Samsung's Post–Hrg. Reply Mem. at 26.)

*not* determined by reference to the royalty rates set forth in the Nokia PLA but, instead, the agreement set forth a lump sum amount to be paid by Nokia in satisfaction of its royalty obligation; specifically, Nokia agreed to pay $253 million to Interdigital, including $233 million in royalty payments. (*Id.*)

Both Samsung and Interdigital brought the Nokia Settlement to the attention of the Panel, but disputed its effect upon the issues presented in the Samsung II Arbitration. Specifically, the parties disagreed as to whether Samsung could elect the Nokia Settlement, pursuant to the Samsung PLA's "equal footing" clause, as a reference point for determining Samsung's Period 2 royalty obligation. (Samsung's May 10, 2006 Ltr. at 2.) The Panel twice requested the parties to submit additional evidence and argument in support of their respective positions on this issue. (*See* Samsung II Panel's May 11, 2006 Ltr. at 1–2; Samsung II Panel's May 22, 2006 E-mail.) On May 24, 2006, the Panel requested additional briefing and set a "further hearing" regarding the Nokia Settlement for June 20, 2006. (Samsung II Panel's May 26, 2006 Ltr. at 1–2.)

Subsequently, by letter dated June 1, 2006, Interdigital asserted that the Nokia Settlement had "no bearing on Samsung's liability for Period 2 royalties." (Interdigital's June 1, 2006 Ltr. at 1.) In its response letter, Samsung stated, *inter alia,* that

> The Nokia settlement at this time has no legally binding effect on this proceeding.... The future effect of the Nokia settlement is not the subject of this arbitration. While the parties disagree as to the nature or effect of the Nokia settlement [under the "equal footing" clause] that could impact on their relationship, the parties appear to agree that the

arbitrators *need not rule* on whether Samsung may or even must elect the Nokia settlement now. Rather, if an "election of the Nokia settlement" by Samsung is made, any dispute over that election will be resolved later not now. (Samsung's June 12, 2006 Ltr. at 1–2 (emphases added).) Thus, on June 15, 2006, the Panel canceled the hearing previously scheduled for June 20, stating that it had "reviewed all of the Parties' submissions regarding the Nokia Settlement," and concluded that "the Parties are in agreement that the Nokia Settlement is not to be considered by the [Panel]." (Samsung II Panel's June 15, 2006 Ltr. at 1.) The Panel found that, "in view of the Parties['] agreement ..., the [Panel] does not believe that a further hearing is required." (*Id.*)

By letter dated June 26, 2006, Samsung sought to clarify its earlier position regarding the Nokia Settlement, stating that, while it deemed the Nokia Settlement to have no "legally binding effect" on the Samsung II Arbitration because "Samsung ha[d] not yet elected that agreement,"[6] that did *"not* mean that the Nokia Settlement is *legally irrelevant* to this proceeding—far from it." (Samsung's June 26, 2006 Ltr. at 1–2.) Samsung also argued that the existence and the terms of the Nokia Settlement supported Samsung's position that it "has no royalty obligation to InterDigital at this time," and requested that the parties' "letters and exhibits" relating to the Nokia Settlement—including "this letter and enclosed exhibits"—be included in "the official record of the hearing." (*Id.* at 2–6.) However, Samsung did not renew its request for a hearing. (*See id.*)

Subsequently, by letter dated July 11, 2006, the Panel "confirm[ed] that the [Pan-

---

6. It is undisputed that, through the date that the Samsung II Panel issued the Award, Samsung had not attempted to elect the Nokia Settlement under the Samsung PLA's "equal footing" clause. (*See* Samsung's June 16, 2006 Ltr.)

el] has closed the hearings in this matter effective June 26, 2006"—the date of Samsung's final letter submission. (Samsung II Panel's July 11, 2006 Ltr.)

### G. The Samsung II Award

Following a three-day hearing, which included the parties' respective opening statements, the testimony of four live witnesses, the Panel's consideration of "approximately 600 exhibits ..., contained in 14 volumes and consisting of thousands of pages," and the parties' respective pre- and post-hearing briefs, the Panel issued the Award on August 28, 2006. (*See* Award at 11–12.) In a fifty-two page decision, the Panel concluded, *inter alia*, that (1) under the "equal footing" clause of the Samsung PLA, Samsung had elected to have its Period 2 royalty obligation adjusted by reference to the Nokia PLA (*id.* at 24); and (2) Samsung must pay royalties to Interdigital according to the terms of the Nokia PLA but taking into account the comparative sales volumes of Nokia, SE, and Samsung (*id.* at 36–41).

With regard to the first finding, the Panel determined that, in September 2002, Samsung had affirmatively elected to be "bound by the Nokia PLA 'royalty provision' " as it applied to Samsung's Period 2 sales, but did not elect to be bound by *all* the terms of the Nokia PLA" (*id.* at 26 (emphasis in original)).

With regard to the methodology for adjusting the Nokia royalty provisions, the Panel rejected Samsung's argument that it was entitled to a "blending" of the royalty rates paid by other companies to Interdigital. (*Id.* at 35–36.) Furthermore, in order to place Samsung on "equal footing" with Nokia—as required by the Samsung PLA—the Panel relied on the "differences in sales volumes between Samsung, Nokia, and [SE]," as the "quantifiable relevant factor[s]" in determining "how to adjust the [SE] rate schedule for Samsung based on the Nokia PLA and the [Nokia

Award]." (*Id.* at 37–38.) The Panel determined that, among the "various methods to make such adjustments" that were presented by the parties, the volume discount methodology applied in the Nokia Arbitration also known as "Method 2"— "should be followed as the fairest in giving effect to the language and intent of the ['equivalent terms' and 'equal footing'] provisions in the Nokia and Samsung agreements." (*Id.* at 38.) Specifically, the Panel concluded that:

> [T]he volume discounts to be applied to Samsung in order to put it on an "equal footing" with Nokia should be based on the same rate schedule determined for Nokia by the Nokia [Panel's] Arbitration Award, but adjusted to account as accurately as possible for the differences in handset sales between Samsung and Nokia.

(Award at 38.) Applying this methodology, the Panel determined that Samsung owed Interdigital $133.94 million in Period 2 royalties, with interest on that amount to be paid at 5% annually. (*Id.* at 50–51.)

Finally, the Panel addressed the parties' post-hearing submissions regarding the Nokia Settlement and its relevance to the issues presented in the Samsung II Arbitration. Specifically, the Panel observed that "the Parties agreed that the Nokia Settlement was not to be considered by the [Panel]," and quoted Samsung's June 12, 2006 letter, wherein Samsung's counsel stated that the "Nokia settlement ... has no legally binding effect on this proceeding." (Award at 49 (quoting Samsung's June 12, 2006 Ltr. at 1).) Thus, according to the Panel, it had "determined that it would not rule on any matter encompassed in the Nokia Settlement and it has not done so." (*Id.* at 49.)

### H. Samsung III Arbitration

Following the issuance of the Award and the filing of the instant petition, Samsung

initiated another arbitration with Interdigital on October 26, 2006 (hereinafter, the "Samsung III Arbitration"). (*See* Zynda Decl., Ex. 36.) The dispute in that proceeding arises from Samsung's assertion that, since the conclusion of the Samsung II Arbitration and the filing of the instant action, it has effectively elected the Nokia Settlement under the "equal footing" clause of the Samsung PLA, and that the terms of the Nokia Settlement—rather than the terms of the Nokia PLA—should be used to adjust Samsung's Period 2 royalty obligations. (*Id.* ¶¶ 26–28.) At oral argument regarding the cross-petitions, the parties indicated that an evidentiary hearing is scheduled to be held before the Samsung III Panel on February 6, 2008, and that a decision would follow, at the earliest, five to eight months thereafter. (*See* Oral Arg. Tr. at 20.)

## II. PROCEDURAL HISTORY

On September 6, 2006, Interdigital filed its petition to confirm the Award. On September 13, 2006, Samsung filed its opposition to Interdigital's petition as well as a cross-petition to vacate the Award. On September 4, 2007, the case was reassigned to the undersigned. Oral argument was held before the Court on November 19, 2007.

## III. STANDARD OF REVIEW

Because the Award in this action was rendered against a foreign corporation namely, Samsung—in an arbitration proceeding conducted under the rules of the International Chamber of Commerce ("ICC"), and the parties* dispute was governed by a commercial agreement that contemplated and resulted in performance, at least in part, outside the United States, the instant action is subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"). *See* 9 U.S.C. §§ 201, 202. The Federal Arbitration Act ("FAA") provides that, with regard to applications made under the New York Convention, a district court "*shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added); *see InterDigital,* 407 F.Supp.2d at 528.

■ The Second Circuit "has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration a wards in obeisance to that process . . . ." *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC,* 497 F.3d 133, 139–40 (2d Cir.2007) (citing *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 200 (2d Cir.1998) (noting the strong judicial support of "[t]he use of arbitration as a device to resolve disputes")). "To encourage and support the use of arbitration by consenting parties, [the Second Circuit], therefore, uses an extremely deferential standard of review for arbitral awards." *Id.* at 140 (internal citation omitted). Thus, in this Circuit, courts will "vacate an award only upon finding a violation of one of the four statutory bases [enumerated in the Federal Arbitration Act (the 'FAA'), 9 U.S.C. § 10(a) ], or, more rarely, if we find a panel has acted in manifest disregard of the law." *Porzig,* 497 F.3d at 139 (citing *Wallace v. Buttar,* 378 F.3d 182, 189 (2d Cir.2004)).

■ Furthermore, upon review of an arbitral award in federal court, the arbitration panel's "factual findings and contractual interpretation are not subject to judicial challenge . . . ." *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 214 (2d Cir.2002) (citing *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,* 126 F.3d 15, 25 (2d Cir.1997) ("Interpretation of [a] contract term [ ] is within the province of the arbitrator and will not be overruled simply because we disagree with that interpreta-

tion."); *In re Andros Compania Maritima*, 579 F.2d 691, 704 (2d Cir.1978) ("[W]hatever arbitrators' mistakes of law may be corrected, simple misinterpretations of contracts do not appear [to be] one of them.") (internal quotation marks omitted); and *In re I/S Stavborg*, 500 F.2d 424, 431 (2d Cir.1974) (finding no grounds for vacatur based on a clearly erroneous contract interpretation)). "Therefore, a court may not conduct a reassessment of the evidence or vacate an arbitral award because the arbitrator's decision may run contrary to strong evidence favoring the party seeking to overturn the award." *Fairchild Corp. v. Alcoa, Inc.*, 510 F.Supp.2d 280, 286–87 (S.D.N.Y.2007) (citing *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir.2004)). Indeed, "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." *Wallace*, 378 F.3d at 190 (citing *St. Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44–45 (2d Cir.1997) ("Internal inconsistencies in the [arbitrator's] opinion are not grounds to vacate the award notwithstanding the [movant's] plausible argument that the arbitrator's decision was misguided or our own concerns regarding the arbitrator's conclusion.")); *see also Fairchild*, 2007 WL 2775141, at *4 ("Nor do internal conflicts embodied in the arbitrator's decision warrant denying confirmation of an award") (internal citation omitted).

## IV. DISCUSSION

### A. Vacatur of the Award

Samsung asserts three grounds for vacatur of the Award: (1) the Panel wrongfully refused to consider evidence relating to the Nokia Settlement; (2) the Panel manifestly disregarded the law of collateral estoppel by refusing to apply a "per-unit royalties" rate, as allegedly applied by the panel in the Samsung I Arbitration; and (3) the Panel manifestly disregarded the law of collateral estoppel by awarding interest on the Award.[7] (Samsung's Supp. Br. at 17–25.) In addition, Samsung asserts that enforcement of the Award should be stayed pending resolution of the Samsung III Arbitration because that pro-

---

7. The Court notes that, in its cross-petition to vacate the Award, Samsung asserted several additional grounds for vacatur. (*See* Resp.'s Cross–Petition ¶¶ 52–78.) However, in its submissions to the Court, Samsung has addressed solely the three above-cited grounds for vacatur and, as to the remaining grounds, has "neither refute[d] nor even mention[ed]" Interdigital's argument as against those grounds. *Arias v. Nasdaq/Amex Mkt. Group*, No. 00 Civ. 9827(MBM), 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims). Accordingly, because it appears that Samsung has abandoned those grounds asserted in the cross-petition but not addressed in its papers, the Court declines to address the merits of Samsung's cross-petition for vacatur on such grounds. *See, e.g., Pierre v. City of New York*, No. 05 Civ. 5018(JFB), 2007 WL 2403573, at *13 (E.D.N.Y. Aug. 17, 2007) (finding that certain claims asserted by a party were abandoned where that party failed to address such claims in its papers opposing a summary judgment motion); *Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03 Civ. 6614(WHP), 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of the plaintiffs failure to address it in opposition to defendant's summary judgment motion on the claim); *DeVito v. Barrant*, No. 03 Civ.1927(DLI), 2005 WL 2033722, at * 10 (E.D.N.Y. Aug. 23, 2005); *K.M.L. Lab. Ltd. v. Hopper*, 830 F.Supp. 159, 167 (E.D.N.Y.1993) (finding that the defendant abandoned certain counterclaims by failing to address such claims in its moving papers). Indeed, at oral argument regarding the parties' cross-petitions, Samsung's counsel specifically stated that Samsung had "limited [its] appeal … to those *three points* that we think meet the standard" for vacatur of an arbitral award. (Oral Arg. Tr. at 2 (emphasis added).)

ceeding will allegedly render the Award moot.

For the following reasons, the Court finds that Samsung has failed to present any basis for vacatur of the Award and, thus, confirms the Award in its entirety and denies Samsung's cross-petition to vacate the Award. The Court also denies Samsung's request for a stay of enforcement of the Award.

### 1. Refusal to Hear Evidence

Samsung asserts that the Samsung II Panel "committed misconduct in unreasonably refusing to consider evidence of the [ ] Nokia Settlement." (Samsung's Supp. Br. at 18.) For the reasons that follow, the Court rejects this argument as a basis for vacatur of the Award.

#### a. Legal Standard

 Although section 10 of the FAA sets forth four narrow circumstances under which judicial vacatur of an arbitral award is appropriate, Samsung asserts only one basis for vacatur under that section—namely, that "the arbitrators were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy...." 9 U.S.C. § 10(a)(3). However, " '[e]very failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award.' " *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 481 F.3d 813, 818 (D.C.Cir.2007) (quoting *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901,* 763 F.2d 34, 40 (1st Cir.1985)) (alteration in original) (additional internal citation omitted). "Rather, a federal court may vacate an award only if the [arbitration] panel's 'refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings.' " *Lessin,* 481 F.3d at 818 (quoting *Hoteles Condado Beach,* 763 F.2d at 40) (additional internal citations omitted). In other words, a panel's erroneous refusal to

hear "pertinent and material" evidence will only provide a basis for vacatur if the decision deprives a party of a fundamentally fair arbitration process. *Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16, 20 (2d Cir.1997) ("Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review.... Federal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair.") (internal quotation marks and citation omitted); *see, e.g., Concourse Beauty School, Inc. v. Polakov,* 685 F.Supp. 1311, 1318 (S.D.N.Y.1988) (" 'The misconduct must amount to a denial of fundamental fairness of the arbitration proceeding in order to warrant vacating the award.' ") (quoting *Transit Cas. Co. v. Trenwick Reins. Co.,* 659 F.Supp. 1346, 1354 (S.D.N.Y.1987)). "Thus, there is no statutory ground for vacation of the arbitration award if the arbitrators refused to hear [the evidence at issue] because [it] would be irrelevant or merely cumulative." *Lessin,* 481 F.3d at 818; *accord Tempo Shain Corp.,* 120 F.3d at 20; *see, e.g., Max Marx Color & Chem. Co. Employees' Profit Sharing Plan v. Barnes,* 37 F.Supp.2d 248, 251 (S.D.N.Y.1999); *Brandt v. Brown & Co. Securities Corp.,* No. 94 Civ. 6640(JSM), 1995 WL 334381, at *5 (S.D.N.Y. June 5, 1995) ("[A]rbitrators ... need not compromise the speed and efficiency that are the goals of arbitration by allowing the parties to present every piece of relevant evidence. Rather, 'arbitrators must be given the discretion to determine whether additional evidence is necessary or would simply prolong the proceedings.' ") (quoting *Catz Am. Co. v. Pearl Grange Fruit Exch., Inc.,* 292 F.Supp. 549, 553 (S.D.N.Y.1968) (additional internal citations omitted); *see also Polin v. Kellwood Co.,* 103 F.Supp.2d 238, 261

(S.D.N.Y.2000) ("An arbitrator is merely required to give each party an adequate opportunity to present its evidence and argument.") (citing *Tempo Shain Corp.,* 120 F.3d at 20)); *Trade & Transp. v. Natural Petroleum Charterers,* 738 F.Supp. 789, 792 (S.D.N.Y.1990) ("Arbitrators have discretion to hear or not hear additional evidence.").

### b. Analysis

■ Here, Samsung does not assert that the Panel refused to hear or flatly rejected consideration of the evidence relating to the Nokia Settlement (hereinafter, the "Nokia Evidence"). Instead, while conceding that the Panel actually "reviewed" all of the Nokia Evidence and "admitted such evidence into the record" (Samsung Supp. Br. at 10–14; *see* Samsung Opp. Br. at 6), Samsung nevertheless asserts that the Panel's "effective exclusion" of the Nokia Evidence warrants vacatur of the Award under Section 10(a)(3).

It is clear that Samsung's "refusal to consider" argument essentially seeks vacatur on the ground that the Panel failed to consider the Nokia Evidence in the precise manner desired by Samsung. The Court rejects this argument—that the Panel's alleged refusal to properly *consider* rather than their outright refusal to *hear* the Nokia Evidence justifies vacatur—as contrary to Section 10(a)(3) and the relevant authority in this Circuit applying that provision. Specifically, it is well-settled that vacatur is appropriate under Section 10(a)(3) where the panel (1) refused "to *hear* evidence pertinent or material to the controversy," *Tempo Shain Corp.,* 120 F.3d at 20 (emphasis added), or (2) flatly "reject[ed] consideration of relevant evidence essential to the adjudication of a fundamental issue in dispute," *Fairchild,* 2007 WL 2775141, at *5. *See* 9 U.S.C. § 10(a)(3). However, it is also clear that vacatur is not appropriate under Section 10(a)(3) where the losing party in an arbitration merely takes issue with the weight accorded to certain evidence actually considered by the panel or with the panel's rejection of arguments related to such evidence. Rather, the losing party's assertion "that the arbitrators failed to give the evidence the 'consideration' it deserved" must be rejected as an improper "attempt to probe the collective minds of the arbitrators as to how they reached their judgment." *Hunt v. Mobil Oil Corp.,* 654 F.Supp. 1487, 1512 (S.D.N.Y.1987); *see, e.g., Blue Tee Corp. v. Koehring Co.,* 754 F.Supp. 26, 31 (S.D.N.Y.1990) ("[T]he Arbitrator's refusal to consider the evidence . . . does not constitute a refusal to hear evidence . . . ."); *M. Slavin & Sons, Ltd. v. Cirillo,* No. 90 Civ. 1340(ERK), 1990 WL 299933, at *3 (E.D.N.Y. May 18, 1990) (refusing to vacate an award where the petitioner "[did] not allege that it was barred from presenting all of its evidence on mitigation" but "merely allege[d] that the evidence . . . was not properly considered by the arbitrator"); *Syscon v. Annuity Fund for Ministers, Inc.,* No. 82 Civ. 2387(RO), 1984 WL 424, at *2 (S.D.N.Y. May 30, 1984).

In addition, contrary to Samsung's assertion, the portion of the Award cited by Samsung cannot be plausibly read as establishing that, although the Panel reviewed the Nokia Evidence, it "effective[ly]" excluded such evidence. (Samsung's Opp. Br. at 6.) Specifically, Samsung points to a section of the Award entitled "Subsequent Event," wherein the Panel noted that "the Parties agreed that the Nokia *Settlement* was not to be considered by the [Panel]" based on the parties' respective statements to the Panel that the Nokia Settlement had no "legally binding effect" and "no bearing" on the issues before the Panel. (Award at 48–49 (emphasis added).) The Panel thus proceeded to state, in relevant part, that:

The [Panel] advised the Parties that in view of the [parties'] statements, a further hearing [regarding the Nokia Settlement] was not required unless one was requested. The Parties concurred and the . . . hearing date was cancelled. In view of the above, the [Panel] determined that it would not rule on any matter encompassed in the Nokia Settlement and it has not done so.

(*Id.* at 49.) However, in light of the context in which it appeared, the Panel's statement that "the Nokia Settlement"—rather than the Nokia *Evidence*—"was not to be considered" clearly reflected its view that, in line with Samsung's express assertions, there was no need for the Panel to consider whether the Nokia Settlement *itself* had a "legally binding effect" on the issues presented in the Samsung II Arbitration. (*See* Award at 49.) This assertion clearly does not negate the Panel's statements elsewhere in the Award—as summarized below—regarding its review of the Nokia Evidence as it bore on the issues before the Panel.

Indeed, it is beyond doubt that the Panel both heard *and* considered the Nokia Evidence and its relevance to the central issue in the Samsung II Arbitration—namely, the determination of Samsung's Period 2 royalty obligation under the Samsung PLA. Specifically, the Panel requested, accepted, and reviewed extensive submissions from both parties regarding the Nokia Settlement and its relevance to the Samsung II Arbitration, as demonstrated by the Panel's correspondence with the parties prior to issuing the Award, and the Award itself.

First, the Panel received notice and copies of the Nokia Settlement on May 1, 2006. (*See* Interdigital's May 1, 2006 Ltr. at 1.) Second, the Panel requested and received voluminous briefing and exhibits from both parties regarding the relevance of the Nokia Settlement on, respectively, May 1, 10, 19, and 23, and June 1, 12, 14 and 26, of 2006. (*See* Malek Decl. Exs. 14–17, 39, 43, 55.) Third, the Panel scheduled a June 20, 2006 hearing devoted to the Nokia Evidence and the relevance of the Nokia Settlement (The Panel's May 24, 2006 Ltr. at 1–2), which was cancelled after counsel for Samsung informed the Panel that "no further hearing is required as the parties [sic] positions are clear from the letters as you note" (*See* Zynda Decl Ex. 40 (Counsel for Samsung's June 15, 2006 email message to the Panel)).

Fourth, in a letter to the parties dated June 15, 2006, the Panel stated that it had "reviewed all of the Parties' submissions regarding the Nokia [S]ettlement," and that "the information and arguments previously submitted by the Parties [regarding the Nokia Settlement] would enable it to render an Award." (The Panel's June 15, 2006 Ltr. at 1.)

Finally, in the Award itself, the Panel summarized Samsung's June 26, 2006 submission regarding the Nokia Settlement—Samsung's only submission following the Panel's June 15 letter—and specifically noted that the Panel had "considered . . . the additional exhibits provided by Samsung [as part of its June 26 submission], and will accept those items as part of the record herein." (Award at 39.)

Accordingly, the Court finds that the record firmly establishes that the Panel did not refuse to hear or reject consideration of the Nokia Evidence, as required for granting vacatur of the Award pursuant to Section 10(a)(3).

■ Furthermore, even assuming *arguendo* that the Panel's failure to conduct a hearing regarding the Nokia Settlement, and its statement that the Nokia Settlement "was not to be considered" (Award at 49), constituted an effective *refusal* to hear "pertinent and material" evidence, 9 U.S.C. § 10(a)(3), Samsung has failed to

establish that such misconduct resulted in a proceeding that "was fundamentally unfair" to Samsung. *Tempo Shain Corp.,* 120 F.3d at 20; *see In the Matter of Consolidated Arbitrations Between A.S. Seateam v. Texaco Panama, Inc.,* No. 97 Civ. 0214(MBM), 1997 WL 256949, at *7 (S.D.N.Y. May 16, 1997) (" 'Only the most egregious error which adversely affects the rights of a party' constitutes misconduct and '[e]rroneous exclusion of evidence does not in itself provide a basis for vacating the award absent substantial harm to the moving party.' ") (quoting *Morrow v. Jersey Capital Mkts. Group, Inc.,* No. 90 Civ. 5305(RPP), 1995 WL 70630, at *2 (S.D.N.Y. Feb.17, 1995) (internal citation omitted)).

Indeed, the conclusions set forth in the Award illustrate that, even if the Panel had refused to consider the Nokia Settlement and the submissions relating thereto, such a failure did not result in a "fundamentally unfair" outcome. Specifically, in its June 26, 2006 submission regarding the Nokia Settlement, Samsung argued that the "relevance of the Nokia Settlement to this proceeding" was that it "indisputably shows" that the findings set forth in the Nokia Award were not binding upon the Panel in the Samsung II Arbitration. (*See* Samsung's June 26, 2006 Ltr. at 1–2 (asserting, *inter alia,* that "the Nokia Settlement undercuts Interdigital's fundamental justification for forcing the Nokia Award on Samsung").) Subsequently, notwithstanding its alleged refusal to consider the Nokia Settlement, the Panel reached precisely the conclusion urged on the Panel by Samsung—namely, that, "as a matter of law," "the Nokia Award findings do not constitute binding determinations that would legally preclude Samsung from litigating those issues [relating to its Period 2 royalty obligation] in this Arbitration.... The [Nokia] Award ... does not constitute a precedent." (Award at 16.)

The Panel then proceeded to conduct its own analysis regarding the proper manner in which to determine Samsung's Period 2 royalty obligation and, ultimately, determined that, under the "equal footing" clause of the Samsung PLA, Samsung had elected the Nokia PLA and, thus, owed Period 2 royalties on "equivalent terms and conditions" as SE. (*See* Award at 16, 24–26, 31, 37.) Therefore, because the Panel ultimately adopted the principal assertion for which Samsung asserts the Nokia Settlement and the evidence relating thereto were relevant—namely, that the Nokia Settlement established the non-binding nature of the Nokia Award—the Panel's alleged failure to consider the Nokia Settlement did not result in a fundamentally unfair proceeding.

Accordingly, the Court finds that Samsung has failed to demonstrate that the Panel's findings regarding the Nokia Settlement and the Nokia Evidence violated principles of fundamental fairness or deprived Samsung of a full opportunity to present its case, and, therefore, rejects Samsung's cross-petition for vacatur pursuant to Section 10(a)(3).

### 2. Manifest Disregard of the Law

#### a. Legal Standard

In addition to the four bases set forth in Section 10 of the FAA, an arbitration award may also be vacated based on the judicially-created doctrine of "manifest disregard of the law." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986); *see also InterDigital,* 407 F.Supp.2d at 528–29. The Second Circuit has observed with regard to this doctrine that:

A party seeking to vacate an arbitration award on the basis of manifest disregard of the law must satisfy a two-pronged test, proving that ... "(1) the arbitrator knew of a governing legal principle yet

refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator was well defined, explicit, and clearly applicable to the case." *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 69 (2d Cir.2003).

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110–11 (2d Cir.2006).

■ With regard to the panel's knowledge of the legal principle at issue, "[a] showing that the average person qualified to be an arbitrator would know the particular rule is insufficient" to establish such knowledge. *Id.* at 111 (citing *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir.1997)). Rather, "the party challenging an award for manifest disregard of the law must demonstrate that the arbitrator actually knew about the relevant rule of law." *Id.* (emphasis added).

■ Put simply, "[i]t is not enough that the moving party provide proof that the arbitrator was aware of the [relevant rule of law]; there must also be a showing of [the arbitrator's] *intent*" to flout the principle. *Westerbeke*, 304 F.3d at 217 (emphasis added) (citing *DiRussa*, 121 F.3d at 821–22 (explaining that the arbitrator must either knowingly "refuse[ ] to apply" or "intentionally disregard[ ]" governing law)). A party seeking vacatur "must therefore demonstrate that the arbitrator . . . willfully flouted the governing law by refusing to apply it." *Id.* at 217.

■ An arbitrator's intent to willfully disregard a legal rule may be based on the arbitrator's explicit acknowledgment thereof. *See id.* at 218. Alternatively, a court may infer the arbitrator's intent "if it finds that the error made by the arbitrator[ ] is so obvious that it would be instantly perceived by the average person qualified to serve as an arbitrator." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir.1997) (citing *Merrill Lynch*, 808 F.2d at 933). "However, determining whether

to make this inference is not an easy task and a reviewing court must proceed with caution. If there is even a *barely colorable* justification for the outcome reached, the court must confirm the arbitration award." *Id.* (emphasis added) (internal quotation marks and citation omitted); *see D.H. Blair*, 462 F.3d at 111 & n. 3; *accord Westerbeke*, 304 F.3d at 218 ("A court may find intentional disregard if the reasoning supporting the arbitrator's judgment 'strain[s] credulity,' . . . or does not rise to the standard of 'barely colorable . . . .' ") (internal citations omitted).

### b. Analysis

■ Samsung argues that the Panel manifestly disregarded the law by failing to accord collateral estoppel effect to the Samsung I Award. Specifically, Samsung asserts that the Panel failed to adopt the Samsung I Panel's definition of the term "equal footing" in the Samsung PLA in (1) determining the amount of Samsung's Period 2 royalty obligation, and (2) awarding interest on Samsung's unpaid royalty obligation. (*See* Samsung's Opp. Br. at 11–12, 20.) For the following reasons, the Court finds that Samsung has failed to establish that the Panel manifestly disregarded the law in issuing the Award.

#### i. Samsung's Period 2 Royalty Obligation

First, Samsung argues that the Panel's findings as to Samsung's Period 2 royalty obligation evinced a willful disregard of the doctrine of collateral estoppel. Specifically, Samsung argues that, because the Samsung I Panel defined the meaning of the "equal footing" clause of the Samsung PLA in determining Samsung's Period 1 royalty obligation, the Panel willfully flouted the doctrine of collateral estoppel by refusing to adopt that same definition in determining Samsung's Period 2 royalty

obligation. (*See, e.g.,* Samsung's Opp. Br. at 14.)

In support of its argument that the Samsung I Award should have been accorded preclusive effect by the Panel, Samsung points to the portion of the Samsung I Award wherein the Samsung I Panel stated that the "equal footing" clause of the Samsung PLA "contemplates [a] reduction in Samsung's royalty rates, not substitution of another agreement or ·its royalty rates." (Samsung I Award at 19.) Thus, according to Samsung, the Panel erred by disregarding the definition set forth in the Samsung I Award and, instead, "substituting the Nokia PLA's royalty provisions in place of those in the Samsung PLA." (Samsung's Opp. Br. at 14.) The Court rejects this argument.

As an initial matter, the Court notes that it is undisputed that, in determining Samsung's Period 2 royalty obligation, the Panel actually knew about the relevant rule of law—namely, the law of collateral estoppel. Specifically, the Panel stated, with regard to the Samsung I Award, that "[t]he determinations there are binding on the identical parties here to the extent the same issues are involved." (Award at 16.) In addition, the Panel determined that the findings set forth in the Nokia Award should *not* be accorded "res judicata" or "collateral estoppel" effect because "Samsung was not a party to the Nokia–InterDigital Arbitration" and, thus, the findings in the Nokia Award "do not constitute binding determinations that would legally preclude Samsung from litigating [certain] issues in this Arbitration." (*Id.*) Therefore, the Panel clearly acknowledged the relevance of the doctrine of collateral estoppel to the issues in the Samsung II Arbitration.

However, it is equally clear that, subsequent to its acknowledgment of the relevance of the doctrine of collateral estoppel, the Panel found that the Samsung I Award addressed a separate and distinct issue than that before the Panel and, thus, should not be accorded collateral estoppel effect. Specifically, the Panel concluded that

> [The Samsung I Arbitration] concerned the dispute between the parties regarding Period 1 [royalty obligations].... The [Samsung I Panel] was ruling on the Period 1 dispute only, and as made clear [in the Samsung I Award] it "makes no decision regarding Period 2."

(Award at 22 (quoting Samsung I Award at 7 n. 6.)) In addition, the Panel concluded that, as to the issue of Samsung's Period 2 royalty obligation, the Samsung I Award "was limited to Period [1], and accordingly is not determinative of the [royalty obligation] issue before us." (Award at 36 n. 1.) Thus, the Panel proceeded to conduct an independent analysis of Samsung's Period 2 royalty obligation without reference to the specific findings of the Samsung I Panel on the issue of Samsung's Period 1 royalty obligation.

With regard to the doctrine of collateral estoppel, the Second Circuit has observed that:

> Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action. *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 492 N.Y.S.2d 584, 482 N.E.2d 63, 67 (N.Y. 1985) (citations omitted); *see also Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir.1991).

*Evans v. Ottimo,* 469 F.3d 278, 281 (2d Cir.2006); *accord Jenkins v. City of New York,* 478 F.3d 76, 85 (2d Cir.2007).

Here, the Panel clearly had a "colorable justification" to conclude that, although collateral estoppel bound the parties to the findings in the Samsung I Award "to the extent the same issues [were] involved" (Award at 16), the issue of Samsung's Period 1 royalty obligation that was addressed in the Samsung I Arbitration was not identical to the issue of Samsung's Period 2 royalty obligation that was being addressed in the Samsung II Arbitration. *Willemijn,* 103 F.3d at 13. This conclusion is based on (1) the portions of the Samsung I Award that indicate the Samsung I Panel limited its findings solely to the issue of determining Samsung's Period 1—rather than its Period 2—royalty obligation; and (2) the separate and distinct contractual provisions that governed the issues before the Samsung I and Samsung II Panels, respectively.

First, in the Samsung I Award, the panel noted that, "except for ruling on the effective date of Samsung's royalty rate adjustment, the Panel *makes no decision regarding Period 2.*" (Samsung I Award at 7 n. 6 (emphasis added).) Thus, the Samsung I Panel resolved the issue before it by concluding that "the most appropriate way to place Samsung on an equal footing with Nokia is to establish a Period 1 lump sum payment requirement for Samsung," and issued an award related solely to the amount of Samsung's Period 1 royalty obligation. (See Samsung I Award at 26–27.) These findings by the Samsung I Panel provided, by themselves, a "colorable justification" for the Samsung II Panel to conclude that the Samsung I Award should not be accorded collateral estoppel effect

as to the issue of Samsung's Period 2 royalty obligation.

Second, even apart from the Samsung I Panel's statements regarding the limited scope of its findings, the Samsung II Panel had a "colorable justification" to conclude that the respective issues before the two panels were not identical based on the fact that different contractual provisions governed the specific issues before them. *Willemijn,* 103 F.3d at 13.

As noted *supra,* prior to the Samsung I Arbitration, Samsung elected the Nokia PLA as the guidepost for determining Samsung's royalty obligations. (*See* Samsung I Award at 7 & n. 7.) The Nokia PLA provided that, in order to satisfy its Period 1 obligation, Nokia would pay a lump sum to Interdigital. (*See* Nokia PLA § 3.1.1.) By contrast, in order to satisfy the Period 2 royalty obligation, the Nokia PLA provided that Nokia would "pay royalties" to Interdigital "on equivalent terms and conditions" to those paid by the first of Nokia's "Major Competitors" to enter into an MCLA (a "Major Competitor License Agreement") with Interdigital. (*Id.* at § 3.1.2.) Thus, due to Samsung's election of the Nokia PLA under the "equal footing" clause of the Samsung PLA, different sections of the Nokia PLA governed Samsung's Period 1 and Period 2 obligations.[8]

Therefore, Samsung's assertion that both panels interpreted a single contract provision—namely, the Samsung PLA's "equal footing" clause—is true only at the most general level of detail. (*See* Samsung's Opp. Br. at 14–15.) Indeed, while the Nokia PLA provisions at issue in both

---

**8.** Indeed, due to the distinct contractual provisions governing Period 1 and 2 royalty obligations under the Nokia PLA, the issue of Samsung's Period 2 royalty obligation was not even ripe for review at the time of the Samsung I Arbitration. That is, at the time the Samsung I Award was commenced, *none*

of Nokia's "Major Competitors" had entered into an MCLA with Interdigital, and, thus, the triggering event for determining Samsung's Period 2 obligation had not yet occurred. As a result, as noted *supra,* the Samsung I Panel specifically declined to make any decisions regarding Samsung's Period 2 obligation.

arbitrations were relevant due to a single contractual provision—namely, the "equal footing" clause—the fact that distinct provisions of the Nokia PLA actually controlled the panels' analyses regarding, respectively, Samsung's Period 1 and Period 2 royalty obligations provided a colorable justification for the Samsung II Panel to conclude that the issues in the two arbitrations were not identical. Accordingly, the Panel did not manifestly disregard the law of collateral estoppel by concluding that the issue of Samsung's Period 2 royalty obligation was not actually decided by the Samsung I Panel, and, thus, that the Samsung I Panel's findings should not be accorded preclusive effect on that issue in the Samsung II Arbitration. (*See* Award at 36 n.1); *see Beechwood Restorative Care Center v. Leeds,* 436 F.3d 147, 153 (2d Cir.2006) (internal citation omitted).

### ii. The Award of Interest

■ Samsung also asserts that the Panel manifestly disregarded the law of collateral estoppel by directing Samsung to pay interest on its Period 2 royalty obligation "pursuant to and by analogy to § 3.1.2(D)(v) of the Nokia PLA." (Award at 46 & n. 2.) Specifically, according to Samsung, the Panel manifestly disregarded the "binding effect" of the Samsung I Panel's finding that the "equal footing" clause of the Samsung PLA "called only for a revision of royalty rates" by reference to the Nokia PLA and *not* for the substitution of the Nokia PLA's provisions relating to the award of interest. (Samsung's Supp. Br. at 25.)

However, Samsung has failed to establish that the doctrine of collateral estoppel was "clearly applicable" to the issue of whether Samsung should be required to pay interest on unpaid royalties. *See D.H. Blair & Co.,* 462 F.3d at 111 (citing *Hoeft,* 343 F.3d at 69). Specifically, Samsung

does not, and cannot, point to any portion of the Samsung I Award that addresses the issue of whether the Samsung PLA, although it does not expressly provide for the award of interest, *bars* the award of interest on unpaid royalties for Period 1 or Period 2.[9] Indeed, at the time the Samsung I Panel issued its decision as to the amount of Samsung's Period 1 royalty obligation, Samsung had an existing pre-paid royalty credit that exceeded the amount awarded to Interdigital. Thus, unlike the Samsung II Panel, the Samsung I Panel did not even need to reach the issue of whether interest should be awarded on past-due royalty payments under the Samsung PLA.

Furthermore, even assuming *arguendo* that the Samsung I Panel had made some finding as to whether interest should be awarded on Samsung's Period 1 royalty obligation, the doctrine of collateral estoppel would still not be "clearly applicable" as to the issue of whether interest should be awarded on Samsung's Period 2 royalty obligation. Indeed, the specific provision of the Nokia PLA that the Samsung II Panel referenced in awarding interest applied solely to Period 2 royalties and *expressly* calls for the award of interest on unpaid royalties. (*See* Nokia PLA § 3.1.2(D)(v).) By contrast, the provision of the Nokia PLA at issue in the Samsung I Arbitration applied solely to Period 1 royalties and does not specifically address the award of interest on unpaid royalties. (*See id.* § 3.1.1.)

Accordingly, because Samsung has failed to establish that the Panel manifestly disregarded the law in awarding interest, the Court rejects this argument as a basis for vacatur of the Award.

Indeed, it is apparent to this Court that Samsung's collateral estoppel arguments

---

**9.** The Samsung PLA has no provision for the award of interest.

amount to little more than a thinly veiled attempt to challenge the Panel's "factual findings and contractual interpretation," *Westerbeke*, 304 F.3d at 214, as they related to the "equal footing" clause of the Samsung PLA. However, as noted supra, such findings "are not subject to judicial challenge," *id.*, and "will not be overruled simply because [the court] disagree[s] with [the arbitral panel's] interpretation," *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 25, or "because it is convinced that the arbitration panel made the wrong call on the law," *Wallace*, 378 F.3d at 190. Accordingly, because there is absolutely no basis to conclude that the Panel "manifestly disregarded" the law, the Court rejects Samsung's attempt to supplant the Panel's findings with its own contrary interpretations of the contracts at issue.

\* \* \*

In sum, applying the "extremely deferential standard of review for arbitral awards," *Porzig*, 497 F.3d at 139, the Court concludes that there is no basis to disturb the Panel's findings as set forth in the Award, and, therefore, confirms the Award pursuant to Section 207 of the FAA. *See* 9 U.S.C. § 207.

### B. Stay of the Award

Finally, Samsung requests that this Court stay enforcement of the Award pending resolution of the recently filed Samsung III Arbitration. Specifically, Samsung asserts that enforcement should be stayed because the Samsung III Arbitration will "supersede" and "render moot" the Samsung II Award by resolving issues relating to Samsung's alleged election of the Nokia Settlement under the "equal footing" clause of the Samsung PLA. (Samsung's Opp. Br. at 23.) For the following reasons, the Court rejects Samsung's request.

#### 1. Legal Standard

■ Samsung seeks to invoke the Court's "inherent power to stay proceedings" in deference to "a related proceeding ... that involves the same issues" in order to avoid the risk of "inconsistent results." (Samsung's Opp. Br. at 23 (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).) In *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir.1998), the Second Circuit provided "[g]uidance as to when it is appropriate to stay enforcement of an award under the [New York] Convention...." (internal citation omitted). Specifically, the court in *Europcar* sought to address the "circumstances under which a district court should adjourn enforcement proceedings to await the outcome of parallel proceedings in the originating forum." *Id.* at 316. Thus, the court set forth six "competing concerns" that district courts must balance when "faced with a decision whether to adjourn arbitral enforcement proceedings to await the outcome of foreign proceedings."[10] *Europcar*, 156 F.3d at 317. These factors include:

**10.** The Court notes that, in *Europcar*, the moving party sought a stay of enforcement pending resolution of a parallel proceeding in a foreign court rather than, as here, an arbitral panel convened under the auspices of a foreign arbitral tribunal—namely the International Court of Arbitration. However, the Court finds that the difference between the type of tribunal at issue in *Europcar* and in the instant case is immaterial for the purposes of resolving Samsung's request to stay and, thus, applies the *Europcar* factors to resolve

Samsung's application. *See Europcar*, 156 F.3d at 316. This is especially so where, as here, it is undisputed that the New York Convention "governs the arbitration award at issue" (Samsung Opp. Br. at 23; Pet. ¶ 3), and, as noted *supra*, the court in *Europcar* specifically aimed to provide "[g]uidance as to when it is appropriate to stay enforcement of an award under the [New York] Convention" in deference to "parallel proceedings in the originating forum." *Europcar*, 156 F.3d at 316–17. (internal citation omitted).

(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

(5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country; and

(6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

*Europcar,* 156 F.3d at 317–18 (internal citations omitted).

 In balancing these concerns, "[b]ecause the primary goal of the [New York] Convention is to facilitate the recognition and enforcement of arbitral awards, the first and second factors on the list should weigh more heavily in the district court's determination." *Id.* at 318. In addition, "[a] stay of confirmation should not be lightly granted lest it encourage abusive tactics by the party that lost in arbitration." [11] *Europcar,* 156 F.3d at 317 (citing *Hewlett–Packard, Inc. v. Berg,* 61 F.3d 101, 106 (1st Cir.1995), and *Fertilizer Corp. of India v. IDI Management, Inc.,* 517 F.Supp. 948, 961–62 (S.D.Ohio 1981)).

### 2. Analysis

Here, the Court finds that, on balance, the above-cited factors favor enforcement of the Award, and, in particular, that the first and second factors overwhelmingly favor enforcement.

 First, the objectives of arbitration—namely, "the expeditious resolution of disputes and the avoidance of protracted and expensive litigation"—overwhelmingly favor enforcement of the Award at this time, after the parties have devoted years of effort to litigating their dispute before the Panel and this Court. *Europcar,* 156 F.3d at 317. Indeed, it is beyond doubt that adjourning enforcement of the Award while this Court awaits the conclusion of what is likely to be yet another protracted and fiercely contested arbitration proceed-

**11.** The Court notes that Samsung did not address the *Europcar* standard in its moving papers in support of its application for a stay of enforcement but, rather, cited only the inherent power standard set forth in *Landis,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153. Although the Court found *supra* that the *Europcar* standard should control the Court's analysis of this issue, it is clear that, assuming *arguendo* that the Court were to apply the inherent power standard set forth in *Landis,* the Court, in its discretion, would reject Samsung's request to stay enforcement pending the potentially distant resolution of yet another arbitration proceeding, especially where Samsung has failed to "make out a clear case of hardship or inequity" arising from enforcement of the Award. *See Landis,* 299 U.S. at 255, 57 S.Ct. 163.

ing would seriously undermine these objectives.

Second, with regard to the status of the other proceeding, Samsung initiated the Samsung III Arbitration on October 26, 2006, and filed an amended request for arbitration at some point prior to January 30, 2007. (*See* Samsung's Jan. 30, 2007 Ltr. at 1.) At oral argument regarding the instant cross-petitions, counsel for Samsung indicated that the Samsung III Panel would receive the parties' opening briefs on December 14, 2007, conduct an evidentiary hearing in February 2008, and, most likely, issue an award by May 15, 2008. (Oral Arg. Tr. at 22.) However, counsel for Interdigital indicated that the May 15 date for the issuance of an award was "not a hard cap," and predicted that it would almost certainly take much longer than five and one-half months for the Samsung HI Arbitration to be fully completed. (*See id.* at 24–25.) Thus, it is undisputed that the foreign proceeding at issue here had not yet been initiated at the time this action was filed, and, as of the date of this Order, opening briefs had not even been filed. In addition, based on the parties' representations and the pace of the prior arbitrations between the parties, it appears that the Samsung III Arbitration will not conclude for, at least, five to eight months. Thus, because the Samsung III Arbitration is in a preliminary phase and is unlikely to conclude for an extended period of time, this factor overwhelmingly weighs against adjourning enforcement of the Award.

Third, although it is not clear whether the Award "will receive greater scrutiny" in the Samsung III Arbitration than in this Court, Samsung speculates that the Samsung III Panel may effectively set aside or suspend the findings set forth in the

Award by concluding that the Nokia Settlement, rather than the Nokia PLA, should be used to determine Samsung's Period 2 royalty obligation. Thus, due to the *possibility* that the foreign proceeding at issue here will effectively set aside the dictates of the Award, this factor mildly favors adjourning enforcement of the Award pending resolution of the Samsung III Arbitration.

Fourth, the relevant characteristics of the Samsung III Arbitration strongly weigh in favor of enforcement because the arbitration was initiated (i) with the express goal of "supersed[ing]" and/or "render[ing] moot" the findings in the Award (*see* Samsung's Opp. Br. at 23); (ii) after the underlying enforcement proceeding was initiated in this Court; and (iii) by the party *opposing* enforcement of the Award in federal court.[12] The Court cannot draw a conclusion on the present record as to whether Samsung initiated the Samsung III Arbitration with the "intent to hinder or delay resolution of [the instant] dispute." *Europcar*, 156 F.3d at 318. The Court notes, however, that Samsung initiated the Samsung III Arbitration after the commencement of the instant action, and now relies on the mere fact that the Samsung III Arbitration will soon begin as the principle basis to adjourn enforcement of the Award in this Court. Thus, it could be plausibly inferred from Samsung's actions that it filed the Samsung III Arbitration with the intent, at least in part, to prolong the resolution of the dispute currently before this Court.

With regard to the fifth and sixth factors, the parties have not persuasively argued that any hardships and/or "other circumstances"—that is, beyond the concerns already taken into account herein—should

12. Indeed, because Samsung—and not Interdigital—initiated the parallel proceeding before the ICC, "the possibility of conflicting

results" cannot be laid at "the plaintiffs door." *Europcar*, 156 F.3d at 317.

figure significantly in the Court's analysis of Samsung's request for a stay.

Thus, on balance, the above-cited factors favor enforcement of the Award in order to avoid unjustified delay in "facilitat[ing] the recognition and enforcement" of the Award. *See Europcar,* 156 F.3d at 318. Accordingly, because Samsung has offered nothing more than mere speculation and conjecture as to the risk of "inconsistent" results arising from enforcement of the Award, this Court denies Samsung's request to stay enforcement.

## V. CONCLUSION

For the foregoing reasons, Interdigital's petition to confirm the Award is GRANTED. Samsung's cross-petition to vacate the Award is DENIED. Samsung's motion to stay enforcement of the Award pending resolution of the Samsung III Arbitration is DENIED. The Clerk of the Court shall close this case.

SO ORDERED